825 P.2d 224

**John MATTHEWS, Plaintiff–Appellant,**

**v.**

**STATE of New Mexico, City of Albuquerque, Martines Leasing, Inc., and Ed Martines, Individually, Defendants–Appellees.**

**No. 11378.**

Court of Appeals of New Mexico.

Oct. 8, 1991.

David M. Berlin, Duhigg, Cronin & Spring, Albuquerque, for plaintiff-appellant.

Mark J. Riley, Padilla, Riley & Shane, P.A., Albuquerque, for defendants-appellees.

## OPINION

DONNELLY, Judge.

This is an appeal from an order granting summary judgment dismissing plaintiff's tort claim seeking damages against defendants resulting from a motorcycle accident on property leased by Martines Leasing, Inc. (the corporation). We address two issues: (1) whether the district court properly granted summary judgment against the corporation and Ed Martines, individually, relying on the provisions of the Off–Highway Motor Vehicle Act, NMSA 1978, Section 66–3–1013 (Repl.Pamp.1989) (statute); and (2) whether material issues of fact exist as to whether defendants Martines Leasing, Inc. and Ed Martines, individually, negligently obstructed a public easement. We affirm.

Plaintiff was injured on May 11, 1986, while riding his off-road motorcycle when he drove into a steel cable blocking the entrance to a dirt road leading into property operated by the corporation as a raceway and drag strip. On the afternoon of the accident, plaintiff had been riding his motorcycle in Montessa Park, an off-road recreational vehicle park, owned and maintained by the city of Albuquerque. After riding in the park, he drove onto a dirt road exiting from the south side of the park, and then rode westerly approximately one-quarter of a mile across state-owned lands, and onto a dirt access road which led to the land leased by the corporation from the state.

Following his accident, plaintiff filed suit against the state of New Mexico, the city of Albuquerque, the corporation, and Ed Martines, individually, alleging that he sustained, among other things, personal injuries, medical expenses, permanent disability, and loss of wage-earning ability due to the negligence or willful acts of the defendants in placing the obstruction across the roadway without "flagging," warning or other device to warn of the cable.

Defendants denied liability and asserted, among other things, that plaintiff was a trespasser and that they were immunized from liability under the provisions of the off-highway motor vehicle statute. It is

undisputed that at the time of plaintiff's accident he had not paid a fee to any of the defendants for entry into the land where the accident occurred.

Each of the defendants moved for summary judgment relying, among other things, upon the immunity extended to landowners under the off-highway motor vehicle statute. The corporation and Ed Martines, individually, filed affidavits in support of their motion for summary judgment and relied upon depositions taken by the parties. Martines and the corporation asserted, among other things, that at the time of the accident plaintiff was trespassing upon the lands in question and that he was precluded from recovery under the provisions of the statute. After a hearing, the district court granted summary judgment in favor of each of the defendants. Plaintiff's appeal herein involves only that portion of the district court's order dismissing his complaint against the corporation and Ed Martines, individually. No appeal has been taken from that portion of the order granting summary judgment in favor of the state or the city.

## I. SCOPE OF STATUTORY IMMUNITY

Plaintiff argues that the district court erred in dismissing the corporation and Ed Martines, individually, from the suit, contending that an exception contained in the statute rendered the general immunity extended to landowners inapplicable to the instant case. § 66–3–1013. Defendants assert that the statute exempts them from liability for injuries or damages sustained by operators of off-highway motor vehicles occurring on their lands, and argue that *Vandolsen v. Constructors, Inc.*, 101 N.M. 109, 678 P.2d 1184 (Ct.App.1984), supports the district court's order of dismissal.

In *Vandolsen* a minor riding a dirt bike across property owned by a construction company drove into an excavation site that had been cut across a private road located on the defendant's property and was injured. This court upheld the district court's award of summary judgment, observing that the motorcyclist was a tres-

passer and that the statute barred any recovery thereunder, and that,

not only trespassers are covered by the Act [§ 66–3–1013]. Any person, even those on the land with the owner's permission, cannot recover from the landowner unless entry onto the land is *subject to a fee*. § 66–3–1013(A). [Emphasis in original.]

It would appear that the Legislature determined, in enacting Section 66–3–1013(A), that the use of vehicles off the highway is an inherently dangerous activity for which a landowner should not be liable unless the landowner opens his lands for that purpose and charges a fee.

*Id.* at 114, 678 P.2d at 1189.

Plaintiff in the instant case contends that the district court erred in construing the Act so as to arrive at an interpretation and result contrary to the plain language of the statute. Section 66–3–1013 reads:

[Riding on private lands; landowner's liability.]

A. No landowner shall be held liable for damages arising out of off-highway motor vehicle-related accidents or injuries occurring on his lands in which he is not directly involved unless the entry on the lands is subject to payment of a fee.

B. It is unlawful to operate an off-highway motor vehicle on private lands except with the express permission of the owner of the lands.

In enacting the statute, the legislature addressed the problem of a landowner's liability for injuries sustained during the use of such lands by the operators of off-road recreational vehicles. Unless entry onto the land is subject to a fee, a landowner's liability for injuries resulting from off-highway recreational vehicle-related accidents occurring on his lands is limited. *See Vandolsen v. Constructors, Inc.* The statute, however, does not provide complete immunity; where the landowner receives a fee for the use of his lands, or where a landowner is "directly involved" in causing an injury to another, the statute provides an exception to the immunity granted therein. § 66–3–1013(A).

■ The district court, in awarding summary judgment to the corporation, apparently concluded that the immunity accorded "landowners" under the statute also applied to lessees. We agree. In construing the term "owner," as used in recreational use statutes, the courts have generally interpreted that term to include lessees. *See Vandolsen v. Constructors Inc.* (upholding district court's dismissal of negligence and strict liability claims under Section 66–3–1013 against both landowner and lessee); *see also Peterson v. Western World Ins. Co.*, 536 So.2d 639 (La.Ct.App.1988); *State ex rel. Tucker v. District Court of Thirteenth Jud. Dist.*, 155 Mont. 202, 468 P.2d 773 (1970); *see generally* 62 Am.Jur.2d, *Premises Liability* § 120 (1990); Annotation, *Effect of Statute Limiting Landowner's Liability for Personal Injury to Recreational User*, 47 A.L.R. 4th 262, § 3, at 275 (1986).

Our off-highway motor vehicle statute follows, in part, the approach taken by the 1965 Model Recreational Use Act promulgated by the Council of State Governments and which limits private landowner liability from off-highway recreational motor vehicle accidents. Similarly, Section 66–3–1013 was enacted for the purpose of encouraging private landowners to permit their lands to be freely utilized for off-highway motor vehicle recreational use. *Vandolsen v. Constructors, Inc.*

Prior to the enactment of Section 66–3–1013 in 1975, the legislature, in 1967, had enacted a similar statute, NMSA 1978, § 17–4–7(A) (Repl.Pamp.1988), limiting the liability of landowners, lessees, or other persons in control of lands "who, without charge or other consideration, other than a consideration paid to [the] landowner by the state ... or any other governmental agency, grants permission ... to use his lands for the purpose of hunting, fishing, trapping, camping, hiking, sightseeing *or any other recreational use.*" (Emphasis added.) The latter statute provides that a landowner who grants permission to entrants for recreational use does not thereby:

(1) extend any assurance that the premises are safe for each purpose; or

(2) assume any duty of care to keep such lands safe for entry or use; or

(3) assume responsibility or liability for any injury or damage to, or caused by, such person or group;

(4) assume any greater responsibility, duty of care or liability to such person or group, than if such permission had not been granted and such person or group were trespassers.

■ A comparison of the two recreational land use statutes (Sections 17–4–7 and 66–3–1013) in effect at the time of plaintiff's accident indicates that the legislature, in enacting its more recent statute relating to off-highway motor vehicles, intended to further expand the scope of immunity extended to landowners for accidents or damages resulting from the use of off-highway recreational vehicles occurring on the lands of another. *See Vandolsen v. Constructors, Inc.*, 101 N.M. at 114, 678 P.2d at 1189 (use of off-road vehicles for recreational purposes "is an inherently dangerous activity for which a landowner should not be liable unless ... landowner opens his lands for that purpose and charges a fee."). Since the general recreational land use statute contained in Section 17–4–7 broadly immunizes landowners who permit entry upon their lands for "any ... recreational use," the legislature, in adopting Section 66–3–1013, obviously intended to extend the immunity of landowners as to claims resulting from injuries to operators or passengers of off-highway recreational vehicles beyond that provided by Section 17–4–7. *See Quintana v. New Mexico Dep't of Corrections*, 100 N.M. 224, 668 P.2d 1101 (1983) (in interpreting a statute, reviewing court presumes the legislature was informed as to existing law). Examination of the legislative history of Section 66–3–1013 indicates that, after its enactment, the statute was amended by the legislature in 1985, following this court's decision in *Vandolsen*, so as to broaden the type of recreational vehicles covered by such Act. 1985 N.M. Laws, ch. 189, § 13. The 1985 amendment substituted the term "Off–Highway Motor Vehicle" for "Off–Highway Motorcycles" used in the original Act,

but made no other substantive changes concerning the scope of immunity extended under such Act as interpreted in *Vandolsen*. In amending the statute, the legislature is presumed to have been informed as to the prior judicial interpretation or construction applied to such act. *Bettini v. City of Las Cruces*, 82 N.M. 633, 485 P.2d 967 (1971); *State v. Martin*, 90 N.M. 524, 565 P.2d 1041 (Ct.App.1977). Thus, we conclude that the interpretation of Section 66–3–1013 rendered by the *Vandolsen* court is in conformity with legislative intent.

In adopting Section 66–3–1013, our legislature did not grant complete statutory immunity to landowners for all tort claims arising by reason of injuries sustained by operators or passengers of off-highway recreational vehicles. The statute follows, in part, the approach taken by the Model Recreational Act, providing specific exceptions to landowner immunity. As indicated in W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on The Law of Torts*, Section 60, at 415–16 (5th ed. 1984):

> A significant development ... over the last couple of decades has been the enactment of "recreational use" statutes in most states, passed for the purpose of encouraging landowners to hold open to the public their lands and waters for recreational use. Although the statutes vary in their particulars from state to state, they all limit the duties of landowners toward recreational users injured on the land, typically shielding the owner from liability for such injuries unless the entrant was charged a fee for admission to the premises or was injured on account of the owner's willful or wanton misconduct. [Footnotes omitted.]

Similarly, under our statute, Section 66–3–1013, landowners are not relieved of all duty of care toward passengers or operators of off-highway recreational vehicles who enter upon the landowner's property for recreational purposes; instead, the statute creates two different standards of care: (1) a limited duty of care to off-highway recreational vehicle users who enter upon such lands without payment of a fee; and (2) a higher duty of care to recreational users who have paid a fee for the use of such property. *See* § 66–3–1013. Under the first standard, the statute generally immunizes a landowner from liability for accidents occurring to off-highway recreational vehicle operators occurring on such lands, except where the landowner is "directly involved" in causing injury to another. A heightened standard of care exists, however, where a fee has been paid for recreational use of such land. Under these circumstances, a landowner owes a duty of care beyond that owed at common law to a trespasser or licensee, and which is similar to that extended to business invitees. *See Vandolsen v. Constructors, Inc.; see generally Giese v. Mountain States Tel. & Tel. Co.*, 71 N.M. 70, 376 P.2d 24 (1962) (landowner owes to invitee a duty of ordinary care to maintain premises in reasonably safe condition for protection of persons invited to use premises). Similarly, as noted by Butler, *Outdoor Sports and Torts: An Analysis of Utah's Recreational Use Act*, 1988 Utah L.Rev. 47, at 94–95:

> Recreational use statutes provide a defense to claims of ordinary negligence, but with the exception of Idaho and Ohio, all state statutes allow an injured recreational user to recover for injuries that are willfully, maliciously, or deliberately caused.... The standard [of care required under recreational use statutes] is frequently described as analogous to a landowner's duty toward an unknown trespasser at common law. Willful, deliberate, or malicious conduct is usually not defined in the recreational use statute, however, and therefore must be defined by reference to other state law—typically case law applying those standards in other contexts. [Footnotes omitted.]

Although some state legislatures, in enacting recreational land use statutes, have specifically adopted exceptions to the immunity granted to landowners, where the landowners' conduct has resulted in injury to recreational users and such acts are found to constitute "reckless conduct," "gross negligence" or conduct which is "wanton" in nature, in adopting Section

66–3–1013 our legislature omitted any provision exempting landowners from liability to persons injured upon such lands resulting from acts or omissions of landowners amounting to negligence or heightened degrees of negligence. *See generally* Annotation, 47 A.L.R. 4th 262, *supra,* § 24(a), at 359. *Cf.* NMSA 1978, § 16–3–9 (Repl.Pamp.1987) (limiting liability of landowners to persons injured on such land while using a trail across such property, "unless the injuries are caused by the willful or wanton misconduct of the [landowner].").   Except as to cases involving claims for punitive damages, under SCRA 1986, 13–1827, New Mexico courts do not recognize degrees of negligence; rather, a party alleging that the other party has acted negligently is required to establish by a preponderance of the evidence that a defendant has failed to exercise ordinary care under the circumstances, thereby proximately causing the plaintiff's injury. *Govich v. North Am. Sys.,* 112 N.M. 226, 814 P.2d 94 (1991); *see also Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981); *Gray v. Esslinger,* 46 N.M. 421, 130 P.2d 24 (1942); *Pittard v. Four Seasons Motor Inn, Inc.,* 101 N.M. 723, 688 P.2d 333 (Ct.App.1984); *Ruiz v. Southern Pac. Transp. Co.,* 97 N.M. 194, 638 P.2d 406 (Ct.App.1981).

■  Plaintiff argues, however, that the words "directly involved" contained in the statute constitute an exception to the statutory immunity granted by the statute, and that the matters submitted in response to defendants' motion for summary judgment indicate that material factual issues exist as to whether the acts or omissions of the corporation and Ed Martines, individually, were "directly involved" in the placing of an unmarked cable across the entrance to their property, without providing proper warnings or notice to plaintiff or other operators of off-highway motor vehicles.

■  No New Mexico decision has interpreted the words "directly involved" as used in Section 66–3–1013; however, looking to the general purpose of the statute and the Act as a whole, we conclude that in using the term "directly involved" the legislature intended to except from the grant of statutory immunity acts of a landowner

which are willful or malicious in nature and proximately cause injury to off-highway recreational vehicle users.   As noted in *Orawsky v. Jersey Central Power & Light Co.,* 472 F.Supp. 881 (E.D.Pa.1977), proof of willful or heightened culpability on the part of a landowner toward persons injured after entering such property without payment of a fee is required in order to establish liability under a recreational use statute, since such statute would have little purpose if an exception to immunity based upon the conduct of the landowner was interpreted so as to encompass ordinary negligence.   In ascertaining legislative intent, the court looks not only to the language used in the statute, but also to the objects sought to be achieved by such legislation. *See Martinez v. Research Park, Inc.,* 75 N.M. 672, 410 P.2d 200 (1965); *Patterson v. Globe Am. Cas. Co.,* 101 N.M. 541, 685 P.2d 396 (Ct.App.1984).

As observed in 18 *Causes of Action* 613, "Cause of Action for Personal Injury or Death in Which Recreational Use Statute is Raised as Defense," Section 27, at 684 (1989):

> State recreational use statutes use different terminology in describing the conduct by a landowner that will result in a loss of statutory immunity.   Such conduct is variously described as "willful or malicious" (the terms used by the MODEL RECREATIONAL USERS ACT), "willful and malicious," "willful and wanton," "gross negligence," or "reckless."

■  Although our statute does not expressly define the term "directly involved," in light of the statute's general purpose, we think the legislature, in enacting Section 66–3–1013, intended the words "directly involved" to refer to "willful" or "malicious" conduct proximately causing injury to individuals who have entered upon such property.   In interpreting a statute, the court will not adopt a construction which will defeat the statute's purpose. *Gonzales v. Lovington Pub. Schools,* 109 N.M. 365, 785 P.2d 276 (Ct.App.1989).

In conformity with the statute's general purpose, "willful" or "malicious" misconduct has a well-defined meaning in New Mexico and such conduct is distinguishable from acts or omissions amounting to negli-

gent conduct. "Willful" or "malicious" includes acts or omissions of a landowner which show an actual or deliberate intention to injure or harm another. *See* SCRA 1986, 13–1619; *see also Tessier v. White,* 76 N.M. 748, 418 P.2d 200 (1966); *Potomac Ins. Co. v. Torres,* 75 N.M. 129, 401 P.2d 308 (1965); *Rea v. Motors Ins. Corp.,* 48 N.M. 9, 144 P.2d 676 (1944). As observed in *Thayer v. Denver & R.G.R.R.,* 21 N.M. 330, 154 P. 691 (1916), actionable negligence has no degrees, and when "willfulness" is an element of the conduct in question, the action ceases to be one of negligence. *See also Wood v. Sloan,* 20 N.M. 127, 148 P. 507 (1915).

Applying the above authorities to the case before us, we conclude that the matters presented in opposition to the motion for summary judgment failed to show the existence of facts indicating that the acts of defendant Ed Martines, individually, or agents or employees of the corporation, in placing the cable across the dirt road leading to the racetrack and drag strip area, were "willful" or "malicious" in nature. Once a party moving for summary judgment has made a prima facie showing of entitlement to judgment, the burden shifts to the party opposing the motion to show the existence of specific facts, admissible in evidence, showing whether a genuine issue for trial exists. *Koenig v. Perez,* 104 N.M. 664, 726 P.2d 341 (1986).

■ Under New Mexico law, a "willful" or "malicious" tortious act constitutes more than mere negligence; it is a purposeful act or conscious omission to do an act with the intent to do wrong or cause injury. *Tessier v. White.* Although we agree that the placing of a cable across a roadway resulting in harm to another may establish or give rise under certain circumstances to an inference that such act was willful or malicious in nature, no such showing has been made here. Plaintiff has failed to present evidence indicating that the blocking of the entrance to the lands leased from the state was "willful" or "malicious" in the instant case. Both Ed Martines and Labbate testified that they had previously placed signs and other devices adjacent to or upon the cable blocking the entrance to their property in order to warn of its presence, but that vandals had removed or destroyed such warnings. Although plaintiff testified that he saw no warning signs prior to his accident, plaintiff stated in his deposition, "I don't think that somebody put the cable up to hurt somebody...." Absent a showing that the acts of defendants contributing to plaintiff's injuries were willful or malicious, the immunity extended to landowners under the statute bars plaintiff's action herein.

## II. CLAIM OF EASEMENT

■ Plaintiff also argues that material disputed factual issues existed concerning whether a prescriptive easement in favor of the general public existed over the dirt road leading into the drag strip and raceway area leased by the corporation, and that defendants negligently obstructed such easement.

■ Applying the analysis discussed above, we conclude that the district court properly awarded summary judgment as to this claim. It is undisputed that the land on which plaintiff was injured was owned by the state and leased to the corporation. Absent a statute permitting the creation of an easement over lands owned by the state, an easement cannot be acquired against the state, its subdivisions or persons holding thereunder, no matter how long continued. *See Burgett v. Calentine,* 56 N.M. 194, 242 P.2d 276 (1951). Moreover, even if we were to assume, arguendo, that the road leading into the lands of the corporation was a public roadway, off-highway motor vehicles are required to be operated exclusively off the public highways of the state. NMSA 1978, § 66–3–1011 (Repl.Pamp.1989); *see also* NMSA 1978, § 66–1–4(B)(42) (Repl.Pamp.1989).

## CONCLUSION

The order of the district court granting summary judgment is affirmed.

IT IS SO ORDERED.

ALARID, C.J., and MINZNER, J., concur.