1997-NMCA-114

949 P.2d 287

**Jose D. RIVERO, Personal Representative of the Estate of David Rivero, deceased, Plaintiff–Appellant,**

v.

**The LOVINGTON COUNTRY CLUB, INC., a New Mexico Corporation, Defendant–Appellee.**

**No. 17651.**

Court of Appeals of New Mexico.

Sept. 18, 1997.

Certiorari Denied Oct. 30, 1997.

Dick A. Blenden, Blenden Law Firm, Carlsbad, for Plaintiff–Appellant.

Michael T. Worley, Kelly Mack Cassels, Sanders, Bruin, Coll & Worley, P.A., Roswell, for Defendant–Appellee.

## OPINION

WECHSLER, Judge.

1. The opinion filed in this case on August 14, 1997 is hereby withdrawn and the following substituted therefor. The Lovington Country Club's motion for rehearing is denied.

2. Plaintiff Jose D. Rivero filed a complaint for wrongful death and personal injury against Defendant Lovington Country Club after Plaintiff's son died as a result of an accident on Defendant's grounds. Defendant moved for summary judgment, claiming that it had immunity under the Off–Highway Motor Vehicle Act, NMSA 1978, §§ 66–3–1001 to –1016 (1985). Plaintiff moved for summary judgment on the basis that the road on which the accident occurred had become a public road by prescriptive easement and, alternatively, that Defendant's undisputed acts constituted willful, wanton, or malicious conduct that does not have immunity under the Act. The trial court granted Defendant's motion for summary judgment and denied Plaintiff's motion. Plaintiff appeals only the granting of Defendant's motion for summary judgment. We reverse.

## FACTUAL BACKGROUND

3. Plaintiff was in charge of maintenance at the Lovington Country Club. He and his family had lived on the Country Club grounds for about eleven years. Plaintiff's twenty-year-old son, David Rivero, rode his four-wheeler on the Country Club grounds with Defendant's knowledge. It appears that Defendant did not open its land for free recreational use by the public, but had taken measures to keep the general public out; Defendant's permission was given specifically

to David because he was a resident on Defendant's property.

4. On April 18, 1994, a member of Defendant's board of directors who was a welder welded shut a gate across a paved road on Defendant's grounds in accordance with a decision by the board of directors. The gate had been in existence since 1958, but had never been closed before. Plaintiff claims the single bar of the gate "was invisible to a motorcycle or cart rider." Affidavits by Defendant's manager and board members state that they decided to weld the gate closed to prevent people from driving in to dump garbage. The gate consisted of a 2⅞" iron pipe, with a small "Road Closed" sign facing north, toward the outside of Defendant's property. There was no sign or warning device facing the inside of the property, despite Defendant's knowledge that David rode his four-wheeler around the property.

5. The gate was welded shut between 5:45 and 6:30 p.m. At about 8:30 p.m. that same evening, David was riding his four-wheeler and hit the gate from the inside of Defendant's property. David died from his injuries ten days later.

**DISCUSSION**

■ 6. The Off–Highway Motor Vehicle Act follows, in part, the approach of the 1965 Model Recreational Use Act. XXIV Council of State Governments, *Suggested State Legislation* 150 (1965); *see Matthews v. State*, 113 N.M. 291, 294, 825 P.2d 224, 227 (Ct.App. 1991). The purpose of the Model Recreational Use Act "is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *Suggested State Legislation, supra*, at 150; *see Matthews*, 113 N.M. at 294, 825 P.2d at 227.

7. Section 66–3–1013(A) of New Mexico's Act provides:

No landowner shall be held liable for damages arising out of off-highway motor vehicle-related accidents or injuries occurring on his lands in which he is not directly involved unless the entry on the lands is subject to payment of a fee.

In *Matthews*, the Court interpreted the term "directly involved." The Court noted that the Model Act's grant of immunity to landowners did not extend to acts which are "willful or malicious." *Suggested State Legislation, supra*, at 151 (Model Act does not limit liability which otherwise exists for "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity"); *see Matthews*, 113 N.M. at 296, 825 P.2d at 229. While some state recreational use statutes follow the Model Act in exempting "willful" or "malicious" conduct, the *Matthews* Court observed that others exempt from their grant of immunity conduct that is "willful and malicious," "willful and wanton," "gross negligence," or "reckless." *See id.; see also* Robin Cheryl Miller, Annotation, *Effect of Statute Limiting Landowner's Liability for Personal Injury to Recreational User*, 47 A.L.R.4th 262, §§ 22, 23, 24 (1986); 18 *Causes of Action* 613, "Cause of Action for Personal Injury or Death in Which Recreational Use Statute Is Raised as Defense," § 27, at 684 (1989). Considering the purpose of the Act, the *Matthews* Court concluded that the New Mexico legislature "intended the words 'directly involved' to refer to 'willful' or 'malicious' conduct proximately causing injury to individuals." 113 N.M. at 296, 825 P.2d at 229.

8. The *Matthews* Court next stated that "willful" or "malicious" conduct is defined under New Mexico law as "a purposeful act or conscious omission to do an act with the intent to do wrong or cause injury," and as including "acts or omissions of a landowner which show an actual or deliberate intention to injure or harm another." *Id.* at 297, 825 P.2d at 230.

■ 9. *Matthews*, however, did not address whether "willful" or "malicious" conduct encompasses intentional acts performed without regard for the consequences. In our view, it does. *Matthews* cited three New Mexico cases in support of its interpretation of "willful" or "malicious." One of these decisions was *Potomac Insurance Co. v. Torres*, 75 N.M. 129, 401 P.2d 308 (1965). In that case the Supreme Court defined willfully or maliciously as "the intentioned doing of a harmful act without just cause or excuse or

an intentional act done in utter disregard for the consequences." *Id.* at 132, 401 P.2d at 309. The latter part of this definition is broader than the definitions stated in *Matthews*. Based on *Potomac Insurance Co.*, we conclude that if a landowner performs intentional acts "in utter disregard for the consequences," the landowner is not entitled to immunity under New Mexico's Act. Although we agree with *Matthews* that the Off-Highway Motor Vehicle Act immunizes negligent conduct (including gross negligence) by a landowner, to the extent that *Matthews* may suggest that immunity extends to intentional acts in utter disregard for the consequences, it is hereby modified. *Cf. Paiz v. State Farm Fire & Cas. Co.*, 118 N.M. 203, 211–12, 880 P.2d 300, 308–09 (1994) (discussing the circumstances in which punitive damages are available in contract cases and contrasting reckless disregard of the rights of others, for which such damages may be awarded, with negligence (including gross negligence) for which such damages may not be awarded).

10. This broader definition recognizes the disjunctive use of "willful" or "malicious" in *Matthews* and is consistent with the definition of "willful" given in *Black's Law Dictionary* 1599 (6th ed.1990), as including acts done "with indifference to the natural consequences." *See also Huddleston v. Hughes*, 843 S.W.2d 901, 905–06 (Ky.Ct.App.1992). When a defendant claims immunity under the Act, plaintiffs are therefore not required to prove deliberate intention or purpose to harm in order to rebut a defendant's claim of immunity. *See id.* at 906 (jury question ex-

isted regarding school's liability for willful or malicious conduct although there was no suggestion in record that school deliberately intended to harm child on playground). We also note that this definition does not lead to less immunity than that provided by NMSA 1978, Section 17–4–7 (1967) which generally limits the liability of landowners who permit their lands to be used for recreational purposes without consideration. *See* Restatement (Second) of Torts § 335 (1965).

■ 11. Thus, summary judgment was improperly granted to Defendant in the case on appeal. We believe that a reasonable jury could conclude that Defendant acted "in utter disregard for the consequences" if Defendant welded the gate closed, failing to warn David or Plaintiff, despite Defendant's knowledge that David rode his four-wheeler on the property with Defendant's permission.

## CONCLUSION

12. We reverse the district court's grant of summary judgment to Defendant and remand for further proceedings consistent with this opinion.

13. **IT IS SO ORDERED.**

HARTZ, C.J., and PICKARD, J., concur.