# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __October 15, 2014_____

**NO. 32,028**

**UTTI ATHERTON, LAURA JARAMILLO,
JOHN DOE 1-99, and JANE DOE 1-99,**

      Plaintiffs-Appellees,

and

**STATE OF NEW MEXICO, ex rel.,
GARY K. KING, Attorney General,**

      Plaintiff-Appellee,

v.

**MICHAEL J. GOPIN, d/b/a LAW OFFICES
OF MICHAEL J. GOPIN,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
James T. Martin, District Judge**

Robert (Tito) Meyer
Las Cruces, NM

Kenneth L. Beal
Las Cruces, NM

for Appellees

Gary K. King, Attorney General

Santa Fe, NM

Tonya Noonan Herring, Special Assistant Attorney General

Rebecca C. Branch, Special Assistant Attorney General

Ismael L. Camacho, Special Assistant Attorney General

Albuquerque, NM

for Appellee Attorney General

Caren I. Friedman

Santa Fe, NM

Gorence & Oliveros, P.C.

Robert J. Gorence

Albuquerque, NM

for Appellant

**OPINION**

**BUSTAMANTE, Judge.**

{1}     We are presented with a legal Gordian knot that has defied all attempts to neatly unravel.  As we will explain, certain aspects of the case tempted us to simply slice through the knot and affirm.  Other aspects suggested that reversal was more appropriate.  We conclude that reversal is required.

{2}     Michael J. Gopin appeals from a judgment entered against him under the New Mexico Unfair Practices Act (UPA).  NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2009).  The judgment included treble damage awards in favor of twelve individual Plaintiffs totaling $216,222.57, $757,358.56 in favor of the New Mexico Attorney General as restitution for 110 consumers, and $1,570,000 in civil penalties in favor of the Attorney General.  Gopin asserts four broad theories of error:  (1) that the district court improperly granted a partial summary judgment against him early in the litigation after it refused to allow him to file a late factual response to Plaintiffs' motion; (2) that the district court compounded its initial error by applying the partial summary judgment in favor of Plaintiffs who were later allowed to join the litigation; (3) that the district court erred in deciding that Gopin violated the UPA and that it applied an improperly low standard of conduct when it

concluded that Gopin's violations were willful; and (4) that the awards of civil penalties and restitution are excessive and thus arbitrary.

{3}     We conclude that the district court did err when it refused to allow Gopin to file a factual response to the early motion for partial summary judgment. Its error stemmed from a misreading of our opinion in *Lujan v. City of Albuquerque*, 2003-NMCA-104, 134 N.M. 207, 75 P.3d 423. The partial summary judgment thus entered materially influenced the litigation as it progressed because it settled the question of basic UPA violations and other substantive contractual issues for the remainder of the litigation. Once the partial summary judgment was entered and then applied in favor of all later-joined parties, the only issue left to be litigated was whether the violations were willful within the meaning of the UPA.

{4}     We reverse the finding of willfulness in favor of the Attorney General because it is not clear what the legal standard of conduct is or what standard the district court applied. We also conclude that—in any event—it was error for the district court to grant the Attorney General summary judgment on the issue. We reverse the judgment for treble damages in favor of the individual Plaintiffs because it is reliant on the initial improper summary judgment and because, again, it is not apparent what standard of conduct the district court applied.

# PROCEDURAL BACKGROUND

{5}    Gopin—a lawyer licensed to practice only in Texas—is the sole owner of the Law Offices of Michael J. Gopin, a personal injury law firm with offices in El Paso, Texas.  In late 2004, Gopin opened an office in Las Cruces, New Mexico. Gopin ran the practice at all applicable times as a sole proprietorship.  Though he was not licensed in New Mexico, Gopin employed attorneys who were licensed in New Mexico to help staff the Las Cruces office.

{6}    On December 4, 2007, two of Gopin's former clients filed a complaint for damages against him asserting violations of the UPA and asserting generally that Gopin's advertising was misleading because legal services were improperly being provided by non-lawyer staff contrary to Section 57-12-2(D)(5), (7), (9), and (17). The complaint also asserted that Gopin was engaged in the unauthorized practice of law.  The complaint purported to be filed on behalf of John and Jane Does 1-99 and named the Attorney General as an involuntary Plaintiff.  The complaint and first round of discovery requests were served on December 5, 2007.  Gopin answered the complaint with a general denial on January 7, 2008.  The answer was signed by an attorney/employee of the Las Cruces office.  The record does not reveal whether Gopin responded to the discovery requests at that point.

3

{7} Two months later, Plaintiffs filed a motion for partial summary judgment as to four specific propositions:

I. Declaring having non-attorneys interview and contract with clients for legal services constitutes the unauthorized practice of law and Plaintiffs' contracts and all such similar contracts are void; and

II. Declaring . . . Gopin's practice of taking assignment of an undivided interest in Plaintiffs' causes of action violates the [r]ules of [p]rofessional [c]onduct for the legal practice in New Mexico and Plaintiffs' contracts and all such contracts are void; and

III. Declaring . . . Gopin's practice of charging a contingent fee for collecting personal injury protection (PIP)/med pay insurance benefits in Plaintiffs' causes of action violates the [r]ules of [p]rofessional [c]onduct for the legal practice in New Mexico and Plaintiffs' contracts and all such contracts are void[; and]

IV. Declaring . . . Gopin's advertising of his law practice and the operation of his law practice in New Mexico is in violation of the [UPA].

We note that propositions II and III were not mentioned in the complaint. The motion was served on Gopin on March 3, 2008. Gopin did not respond to the motion within the fifteen-day period set by Rule 1-056(D)(2) NMRA. On April 4, Plaintiffs filed a motion for entry of judgment based on Gopin's failure to respond.

{8} On April 22, Gopin filed a motion seeking an extension of time to respond to the motion for partial summary judgment. His rationale was that he had been seeking counsel and insurance coverage and had just determined that his insurance carriers

4

were not going to extend coverage to the case. He had hired private counsel who entered his appearance a few days before. Gopin also asserted that he had been in contact with Plaintiffs' counsel and had been under the impression that the matter might be dismissed because Gopin did have New Mexico-licensed attorneys in the Las Cruces office. After a hearing, the district court allowed Gopin to file a response on "legal issues only" but did not permit him to respond to any factual assertions. Rather, "all material facts asserted and properly supported in the summary judgment motion" were accepted as true.

{9}     Gopin's memorandum in opposition to the motion for partial summary judgment conceded, per the district court's prior ruling, that he was bound by the facts properly supported in the motion, but he argued that certain of the facts were not supported by evidence. In particular, he argued that his advertising did not indicate that he was licensed in New Mexico. He also argued that there were no facts to support the notion that his fee structure was different or higher than other attorneys. Interestingly, Gopin attached an affidavit signed by his Las Cruces staff attorney addressing the form of retainer contract used by the Gopin firm in New Mexico as well as the way the Las Cruces office was organized and operated. The affidavit could be read to confirm at least some of the factual assertions of the motion for summary judgment.

{10} The district court held what turned out to be a pro forma hearing on the motion—pro forma because the parties relied on their briefs with no elaboration. Gopin did, however, point out that Plaintiffs' reliance on the attorney code of professional conduct was improper given the caution in the code's commentary that "[v]iolation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." Rules of Professional Conduct Scope cmt. NMRA.

{11} The district court nonetheless granted the motion for partial summary judgment. The order in fact attached the motion as an exhibit. Thus, Gopin's retainer agreement was voided as of June 2008. In addition, his advertising and operation of his law practice were held to be in violation of the UPA.

{12} After entry of the order granting partial summary judgment, Gopin settled with the original named plaintiffs, with the exception of the issue of attorney fees, and they were dismissed from the action as of May 2009.

{13} Regardless of their dismissal, the suit continued, first in the person of the Attorney General and later by twelve individuals who were allowed to intervene. By stipulation, the Attorney General was allowed to become a full Plaintiff in May 2008, and he filed his own complaint at that time. The Attorney General's complaint tracked the original complaint to the extent that it relied on Gopin's advertising to

6

support its assertion that Gopin misrepresented his licensure status. The Attorney General's complaint added two allegations. It alleged that Gopin had an arrangement with a local chiropractor for soliciting clients that violated NMSA 1978, Section 36-2-29 (1949). The Attorney General alleged that the retainer agreements thus generated were void pursuant to NMSA 1978, Section 36-2-35 (1949). In addition, the Attorney General's complaint explicitly alleged that Gopin's retainer agreement was void as an unconscionable trade practice because it was presented to clients by non-lawyer staff and because it gave Gopin an ownership in the case rather than a lien on the proceeds of any recovery. A few months later, the Attorney General was allowed to amend his complaint to add an explicit request for restitution as a remedy. The claim for restitution was premised on the partial summary judgment previously entered in favor of the now- dismissed original plaintiffs.

{14} As the Attorney General's claims were being litigated, twelve individuals sought to intervene as substitutes for the Jane and John Does. The district court allowed them to intervene over Gopin's objection. The order allowing the individuals to intervene provided that "all of the [o]rders and [j]udgments entered in this matter should be binding on all of the parties to the case, including movants." Thus, all active Plaintiffs were provided the benefit of the partial summary judgment entered in favor of the now-dismissed original plaintiffs.

{15} Explicitly relying on the previously entered partial summary judgment and its finding of a UPA violation, the individual Plaintiffs and the Attorney General moved for summary judgment on the issue of willfulness under the UPA. After a combined oral argument on the motions, the district court denied the individual Plaintiffs' motion but granted the Attorney General's motion. It is unclear how the district court differentiated between the motions. It appears likely it concluded that the standard of willfulness under the UPA for civil penalties sought by the Attorney General differed from the standard required for treble damages sought by the individuals.

{16} Immediately upon granting the Attorney General's motion, the district court imposed the maximum civil penalty allowed under the UPA—$5,000—per "violation." On inquiry, the district court clarified that the penalty was per client. The district court did not elaborate at the hearing on the basis for its decision to impose the maximum penalty. The order entered after the hearing similarly does not explain the basis for the finding of willfulness or imposition of the maximum penalty. The order simply relies on the earlier partial summary judgment.

{17} The parties proceeded to a bench trial on the issue of willfulness only as to the individual Plaintiffs. The pretrial order recognized willfulness as the only issue and noted the 2008 partial summary judgment. With regard to the Attorney General, the sole issue was the amount of restitution payable to the 110 clients who responded to

8

the Attorney General's letters informing all of Gopin's former clients of the existence of the action. At the close of testimony, the district court dictated findings of fact from the bench, which largely reflect the written findings he later entered. The district court started its oral findings by stating: "First, I will adopt as findings of fact all of the undisputed facts from the March 13th, 2008 summary judgment order." This appeal followed.

**DISCUSSION**

**A.     The 2008 Summary Judgment**

**1.     Standard of Review**

{18}     Gopin argues that the district court erred when it refused to allow him to respond to the factual assertions in the partial summary judgment motion because he demonstrated excusable neglect. We review the argument under our abuse of discretion standard. *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363 ("An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." (internal quotation marks and citation omitted)). But our case law is also clear that "we may characterize as an abuse of discretion a discretionary decision that 'is premised on a misapprehension of the law.' " *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (alteration and citation omitted).

## 2.   The 2008 Partial Summary Judgment is Appealable

{19}   Before we address the merits of the issue, we must address Plaintiffs' argument that Gopin's appeal is untimely.  Plaintiffs maintain that the June 2008 partial summary judgment was final enough when it was entered that Gopin should have appealed then.  Plaintiffs recognize that their argument may be contrary to our well-grounded antipathy to piecemeal appeals.  Citing *Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 26, 113 N.M. 231, 824 P.2d 1033, they acknowledge our strong preference that all issues of law and fact be determined to the fullest extent possible in the district court.  Plaintiffs argue that an exception should be made in this case because the partial summary judgment became the final word on basic UPA violations and "[was] determinative of the remaining issues in the case."  Plaintiffs also note that this Court treated the 2008 order as final in a prior appeal stemming from this action.  *See Atherton v. Gopin*, 2012-NMCA-023, 272 P.3d 700.

{20}   We disagree with Plaintiffs that the 2008 order was final enough to require an appeal from it then.  We note first that the order on its face reflects the grant of a partial summary judgment.  The word "partial" provides a clue—if not a red flag—that the order was not intended to be final, at least for purposes of appeal.  The order left damages, attorney fees, and the issue of willfulness undecided.  Our case law following *Kelly Inn No. 102, Inc.* would not regard such an order as appealable.

10

*See Gates v. N.M. Taxation & Revenue Dep't*, 2008-NMCA-023, ¶ 8, 143 N.M. 446, 176 P.3d 1178. Plaintiffs cite to Rule 1-054(B)(1) and (2) NMRA but make no effort to state why they apply or support their position. Neither rule applies. The district court never made the "express determination that there is no just reason for delay" under Rule 1-054(B)(1). And there was never a judgment entered "adjudicating all issues" as to the original plaintiffs under Rule 1-054(B)(2). Instead, Gopin and the original plaintiffs settled their cases, and an order of dismissal based on the settlement was entered.

{21} Our opinion in the prior appeal is not to the contrary. The finality of the partial summary judgment order was not an issue in the case. Rather, the case addressed an issue that arose after the settlement: the availability of a multiplier in awarding attorney fees under the UPA. *Atherton*, 2012-NMCA-023, ¶¶ 1, 2. Thus, we proceed to the merits.

**3.      The District Court Misapplied *Lujan***

{22} As explained above, Gopin did not file a response to the motion for partial summary judgment within the fifteen-day period required by Rule 1-056(D)(2). The district court's comments at the hearing for extension of time and its order denying the request make clear that it thought that *Lujan* prevented it from considering or granting any request for an extension of time and that the concept of excusable

11

neglect was now irrelevant under *Lujan*. At the hearing, the district court quoted part of *Lujan* and opined that the failure to meet the rule deadline resulted in an irrevocable waiver of the right to respond to factual assertions in the motion. The order denying an extension of time to respond states:

> This [c]ourt is mandated to follow appellate precedent such as *Lujan* . . . , holding that by failing to file a response to a motion for summary judgment within the time specified by rule, the non-moving party waives the right to respond to or to controvert the facts asserted in the summary judgment motion and the [c]ourt should accept as true all material facts asserted and properly supported in the summary judgment motion[.]

This statement clearly indicates that the district court thought that *Lujan* prevented it from considering any reason for the failure to file a timely response. This is a misreading of *Lujan*, though perhaps an understandable one.

{23}     In *Lujan*, the district court granted a summary judgment of dismissal after the plaintiffs failed to timely respond in any way to three motions for summary judgment. The district court in *Lujan* relied on Rule 1-007.1(D) NMRA (2005). *Lujan*, 2003-NMCA-104, ¶¶ 1, 4. At the time of the partial summary judgment motion, Rule 1-007.1(D) read:

> Unless otherwise specifically provided in these rules, any written response and all affidavits, depositions or other documentary evidence in support of the response shall be filed within fifteen (15) days after service of the motion. Failure to file a response within the prescribed time period constitutes consent to grant the motion, is a waiver of the

12

notice provisions of Paragraph C of Rule 1-058 NMRA, and the court may enter an appropriate order.

*Lujan*, 2003-NMCA-104, ¶ 15.

{24}   As we noted in *Lujan*, despite the language of Rule 1-007.1(D) that a failure to timely respond "constitutes consent to grant the motion,"[1] when the motion at issue is for summary judgment, it is improper to resort to the "consent" clause as a basis for granting the motion. *Lujan*, 2003-NMCA-104, ¶¶ 12, 18.  Rather, "the district court must assess [despite the lack of a response] whether, on the merits, the moving party satisfied the burden under Rule 1-056(C)." *Lujan*, 2003-NMCA-104, ¶ 18.  This is the ruling and the message of *Lujan*.

{25}   To illustrate and emphasize the message, *Lujan* quoted a passage from *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002), reflecting the same rule in the federal courts.  In the middle of the quote from *Reed* appears the sentence that the district court below relied on for its ruling:  "By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion." *Id.*

{26}   This sentence does not represent New Mexico's approach to considering summary judgment motions.  The entire quote from *Reed* came from a paragraph in which it summarized the prior discussion in the case.  The reference to the "local

---

[1]This language was deleted from Rule 1-007.1(D) in November 2008.

13

rule" was to Kansas Local Rule 7.4. By referring to it, the Tenth Circuit was not making the local rule apply generally; it was merely being descriptive. This was made clear in *Sutton v. Corrections Corp. of America*, No. 06-CV-01606-DME-KLM, 2008 WL 2797008 (D. Colo. July 17, 2008). In *Sutton*, a party moving for summary judgment cited *Reed* and argued that because the plaintiff had not timely responded, he had waived the right to controvert the facts in the motion. Tenth Circuit Judge Ebel, sitting as a district judge, rejected the argument, noting that "the District of Colorado does not have such a local rule[.]" *Sutton*, 2008 WL 2797008 at *2.

{27} New Mexico does not have such a rule. Indeed, to our mind, it would be passing strange to import such a draconian procedure into New Mexico summary judgment law. It would be antithetical to our strong bent in favor of deciding matters on their merits. And there is simply no reasonable basis on which *Lujan* can be read to negate the applicability of our concept of excusable neglect. If a failure to respond does not result in consent to grant the motion, neither should it result in a waiver of the ability to respond. We reject any such reading of *Lujan*.

{28} Given that the district court misread and misapplied the law applicable to Gopin's request for an extension of time, it necessarily abused its discretion in denying it.[2]

---

[2]Given this determination, we need not consider the parties' arguments about the excusable neglect aspects of Gopin's motion for an extension of time.

14

{29} The issue that arises now is the proper remedy. Normally, of course, a mistake this basic at the very beginning of a case would require reversal if the judgment entered after the mistake ended the case. The effect of the district court's error was to prevent Gopin from controverting the facts contained in the motion. In this circumstance, it would be improper to consider the motion on the merits as described in *Lujan*. In addition, although the judgment did end consideration of certain basic issues, it merely set the stage for the litigation that ensued. The question arises what we should—or can—do with the factual material that came to light as the case progressed.

{30} None of the parties address this problem and neither takes into account facts that came to light as the litigation progressed. Their approach to this part of the appeal is binary. Gopin argues that a full reversal is the only fair resolution, while Plaintiffs insist that we should conduct a merits review and that affirmance is the proper outcome given the presentation in the original motion.[3] Both approaches would have us ignore the facts that came to light as the litigation progressed, though to different effect and for different reasons. Gopin must appreciate that the later-produced evidence—including all of his retainer agreements and settlement

---

[3]Only at oral argument did the Attorney General and counsel for some of the individuals obliquely assert that the trial cured whatever error may have occurred before.

15

disbursement statements, and the revelations about his arrangement with the chiropractor—work to his detriment. On the other hand, Plaintiffs have an interest in preserving the partial summary judgment since it is the sole basis for their assertion that Gopin violated the UPA as to them but at the expense of providing Gopin no remedy for the district court's early mistake.

{31} Hence our dilemma: is it possible to remedy the early error without ignoring the march of litigation events? We see no straightforward solution.

{32} We conclude that reversal of the partial summary judgment without examining the rest of the record is the best course for a number of reasons. First, it best honors New Mexico's approach to summary judgment and clarifies the apparent misinterpretation of *Lujan* that drove the district court's decision.

{33} Second, it results in a remand to a forum better positioned to reconsider the question of UPA violations on a fuller record.[4] The early partial summary judgment short-circuited any full consideration of the nature of the UPA violations present and the particular UPA sections at work. As a result, the partial summary judgment is vague, if not enigmatic. For example, the first three of the four subjects of the partial

---

[4]It would technically be possible for this Court to undertake a full review of the record, but we cannot provide a forum for the full panoply of potential arguments we foresee on remand. And because such an approach requires a Monday morning quarterback-type hindsight, it seems quite problematic.

16

summary judgment address contractual aspects of Gopin's retainer agreement. Even if accurate, we do not see how they constitute violations of the UPA. We note that the district court did not declare the provisions unconscionable, though that would provide a basis for a UPA violation. No other basis for a UPA violation appears in the judgment. We expect that on remand the parties and the district court will address these analytical issues explicitly. Item IV of the summary judgment refers to "advertising," which is a subject of the UPA. But it also refers to the "operation of his law practice in New Mexico" as being in violation of the UPA. It is unclear what this phrase refers to. We decline to speculate further and again expect clarification on remand.

{34} Third, reversal obviates the need to address Gopin's challenges to the district court's decision to apply the partial summary judgment in favor of the later-joined Plaintiffs and the Attorney General. That decision presents thorny practical and legal questions. As a practical matter, it seems problematic to apply a summary judgment based on the experience of two clients in favor of hundreds of other clients. To generalize that way might be possible on a proper record, but here it was done before the district court was privy to any broader information about how Gopin ran the practice in Las Cruces. We are also skeptical that the law of the case doctrine sufficiently supports the district court's decision. But we need not resolve these

17

issues if we remand for reconsideration. The Attorney General and the individual Plaintiffs can make their own independent case for whether Gopin violated the UPA as to them.

{35} Fourth, as we will explain later in this Opinion, we have determined that the summary judgment entered in favor of the Attorney General as to willfulness must be reversed at any rate.[5] Thus, the matter must be remanded for reconsideration of that issue, and it is apt to allow the district court to reconsider the foundation of the case in a fully adversarial posture.

{36} Finally, we conclude that this is not an appropriate case for application of the "right for any reason" approach to appellate review. Generally, an appellate court may affirm a trial court ruling on a ground not relied on below if reliance on the new ground would not be unfair to the appellant. *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154. When applying the right for any reason rationale, appellate courts must be careful not to "assume the role of the trial court and delve into fact-dependent inquiries." *Id.* (alterations, internal quotation marks, and citation omitted). "[W]e may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the

---

[5]We also reverse the conclusion of willfulness as to the individual Plaintiffs though on slightly different grounds.

18

factual allegations that were raised and considered below." *State v. Wasson*, 1998-NMCA-087, ¶ 16, 125 N.M. 656, 964 P.2d 820.

{37} To apply the right for any reason rationale here would require us to speculate that there was no factual presentation Gopin could have made in response to the motion for partial summary judgment that could have swayed the district court. We will not so speculate.

{38} We next consider whether we should analyze any of the facts developed as the litigation progressed to see if they support affirmance. We conclude we cannot and should not because to do so would be to "look beyond" the factual picture the district court initially considered. The same limitation applies to the evidence admitted at the trial finally held in 2012. We, of course, recognize that some of the evidence admitted at trial can be seen as relevant to the issues decided by the partial summary judgment. If the trial had been conducted by the parties to encompass all issues, we could perhaps rely on it to, in a sense, cure the early error. *Cf. Corona v. Corona*, 2014-NMCA-071, ¶¶ 8-9, 329 P.3d 701. But as we noted above, the parties and the district court were clear that the only triable issue was whether Gopin acted willfully under the UPA. Despite the Venn diagram-like overlap of evidentiary relevance, we conclude that considering the trial evidence would have us acting as a trier of fact,

19

considering and weighing evidence in a way the district court did not. It is improper for us to do so. Rather, the trial court should undertake the task in the first instance.

{39} Since we have concluded that the partial summary judgment must be reversed and that it is not appropriate for this Court to comb the record for ways to excuse the error, we could summarily reverse all of the ensuing substantive orders and remand for further proceedings. After all, without a basic finding of a UPA violation, it is inappropriate to consider and rule on whether the violations were willful. We have decided not to rule summarily, however, because the parties have argued issues that are sure to recur on remand, and it would be useful to address them in aid of the work to be done on remand yet to be done by the district court. In particular, the parties have addressed what constitutes "willful" conduct under the UPA and the propriety of the penalty imposed by the district court. We will address both.

**B.    Summary Judgment in Favor of the Attorney General as to Willfulness Was Improper**

{40} A few months before trial, the Attorney General moved for summary judgment as to whether Gopin's "advertisement willfully violated the [UPA] when [he] failed to disclose his jurisdictional limitation and failed to deliver a 'free initial consultation.' "[6] As was the norm in the case at that point, the motion relied on the

---

[6]The individual plaintiffs had previously filed their motion for summary judgment as to willfulness.

20

original partial summary judgment—in this instance, items I and IV—for its foundation. The motion posited fifteen statements of undisputed material facts describing how Gopin ran the Las Cruces office and the advertising he used for the practice. The most salient of the assertedly undisputed facts were that his yellow pages advertising willfully did not disclose his jurisdiction limitation and that none of Gopin's clients ever met or spoke with an attorney before they were presented with and signed a retainer agreement. The motion included excerpts from Gopin's deposition in which he agreed that he had a say in or controlled the content of all his advertising. The motion then incorporated in full several prior motions filed with the district court, including the original motion for partial summary judgment and the Attorney General's responses to earlier motions filed by Gopin. As Gopin noted in his response to the motion, the Attorney General did not include any analysis of the factual showing needed to prove willfulness.

{41} Gopin's response noted generally that the Attorney General's facts were disputed or were simply irrelevant to the issue of willfulness. Gopin's factual response relied on his own affidavit and letters from the Disciplinary Board of the Supreme Court approving—with some exceptions and suggestions—his ability to open a law office in New Mexico and advertise it so long as he had New Mexico-licensed attorneys actually staffing the office. As to the applicable legal standard,

21

Gopin argued that in order to distinguish the required element of "knowing" action under the UPA, the concept of willfulness should be interpreted to require an intent to do wrong or cause injury or an utter disregard for the consequences of one's acts or failure to act.

**1.    Willfulness Standard**

{42}    The district court held one hearing on the individual Plaintiffs' and the Attorney General's motions.  During the hearing, the district court displayed some uncertainty as to the applicable definition for willfulness.  With regard to the individual plaintiffs' motion, he stated he was inclined to apply the UJI definition, but opined that application of the standard might be different depending on whether he ruled as to Gopin in his individual capacity as opposed to in his capacity as the owner of a sole proprietorship.  In the end, the district court denied summary judgment to the individual Plaintiffs.[7]

{43}    In contrast, the district court granted the Attorney General's motion opining that "there is not the same willfulness standard applied to the [A]ttorney [G]eneral's complaint as it applies to the individual clients."[8]  The district court's rationale was

---

[7]The district court specifically relied on the original partial summary judgment to state that a violation of the UPA had already been determined.

[8]We note that Plaintiffs concede on appeal that the standard for willfulness is actually the same for treble damages and civil penalties.

22

that "Judge Robles has already declared his method, act, and practice unlawful under the UPA" and that Gopin had consciously made all the decisions about advertising and, as such, his decisions were willful.

{44} The order of summary judgment did not explain the district court's rationale any further. The operative paragraphs of the order provide:

1. The [o]rder [g]ranting [Plaintiffs' m]otion for [p]artial [s]ummary [j]udgment filed March 13, 2008, by this [c]ourt dated June 3, 2008 declared that Defendant's method, act and practice of advertising for legal services, was unlawful.

2. There are no disputed issues of material fact that the advertising used by . . . Gopin violated the [UPA].

3. The advertising put forth by . . . Gopin was done willfully.

4. . . . Gopin is subject to civil money penalties under the [UPA].

{45} It is impossible to glean from this record any clear understanding of the legal standard the district court used in making its decision that Gopin acted willfully, other than that Gopin acted "intentionally." The district court did not articulate how or whether Gopin's intentional acts differed from acts "knowingly made," which is the requirement for actionable misrepresentations under the UPA. Section 57-12-2(D). We are left with the distinct impression that the district court equated "knowingly made" with "willful." To do so would be error.

{46} The three essential elements of basic UPA claims are:

23

> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

*Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 142 N.M. 437, 166 P.3d 1091; *see* § 57-12-2(D).

{47} Our case law makes clear that "knowingly made" is an integral part of all UPA claims and that it must be the subject of actual proof. *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶¶ 13-15, 18, 112 N.M. 97, 811 P.2d 1308 (holding that the defendants' motion for directed verdict should have been granted because there was no evidence that the defendants knowingly made any false or misleading statements). *Stevenson* does not require proof of actual knowledge in all circumstances. Rather, knowledge can be proven by showing that "in the exercise of reasonable diligence [the defendant] should have been aware that the statement was false or misleading." *Id.* ¶ 17; *see Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 17, 125 N.M. 748, 965 P.2d 332 ("The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services.").

{48} The UPA provides for two tiers of monetary remedies for individuals. For a basic violation, a private party can recover "actual damages or the sum of one hundred dollars ($100), whichever is greater." Section 57-12-10(B). For more aggravated circumstances—where the defendant "has willfully engaged in the trade practice"—"the court may award up to three times actual damage or three hundred dollars ($300), whichever is greater[.]" *Id.*

{49} The UPA similarly provides for two tiers of remedy in actions brought by the Attorney General. For basic violations of the UPA, the Attorney General can seek injunctive relief and restitution. Section 57-12-8. For more aggravated circumstances—where a person has "willfully used a method, act or practice declared unlawful by the [UPA]"—the Attorney General can seek "a civil penalty of not exceeding five thousand dollars ($5,000) per violation." Section 57-12-11.

{50} Given the material difference in the available remedies, it is clear that the Legislature contemplated proof of some culpable mental state to demonstrate "willfulness." *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 2, 135 N.M. 106, 85 P.3d 230 (equating a "culpable mental state" with "willful"). Unfortunately, the Legislature did not provide a definition in the UPA. And, interestingly, no New Mexico case has addressed the issue. Perhaps the lack of case

law explains why our Uniform Jury Instructions also do not address the issue. *See* UJI 13-1707 NMRA.[9]

{51}	Gopin argues that willfulness should be deemed to include an "actual or deliberate intention to injure or harm another." *Matthews v. State*, 1991-NMCA-116, ¶ 21, 113 N.M. 291, 825 P.2d 224. We agree with the Plaintiffs that this is a step too far and would unduly restrict the ability of individuals and the Attorney General to enforce what is clearly a remedial statute.

{52}	Plaintiffs argue that willfulness can be distinguished by requiring an element of design or deliberateness. They draw a distinction between acting by design rather than as a result of "confusion, mistake or faulty memory." The Plaintiffs' approach, however, does not provide any discernable distance between "knowingly made" and "willfully made." The distinction Plaintiffs argue for is in most ways inherent in the concept of "knowingly made." Something more is required.

{53}	For that something more, we turn to the definition of willful found in UJI 13-1827. This is the jury instruction used for consideration of punitive damages, but we conclude that it provides useful guidance—if only because treble damages and the

---

[9]We also note that UJI 13-1707 does not include any reference to "knowingly made." In contrast, UJI 13-1718 NMRA addressing punitive damages for insurance bad faith claims refers to UJI 13-1827 NMRA for its definitions of culpable mental state.

UPA civil penalties are forms of remedy intended to punish a wrongdoer. *McLelland v. United Wis. Life Ins. Co.*, 1999-NMCA-055, ¶ 10, 127 N.M. 303, 980 P.2d 86.

{54} UJI 13-1827 provides that "[w]illful conduct is the intentional doing of an act with knowledge that harm may result." This definition does not include the intent to harm element desired by Gopin, but it does provide a clear method for proof of a culpable mental state by requiring a showing of deliberation and a disregard for foreseeable risk. Proof of these two elements provides a solid foundation for punishment. *See Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶¶ 2, 59, 131 N.M. 100, 33 P.3d 651 (holding that a finding of willful conduct would support an award of 15% as a post-judgment rate). On remand, the district court should reconsider the Plaintiffs' requests for treble damages and penalties in light of this discussion.[10]

**2.      Amount of the Penalty**

{55} At the conclusion of the hearing on the motions for summary judgment on willfulness, the district court imposed the maximum UPA-allowed penalty of $5,000 per client against Gopin. The district court did not provide any explanation for its

---

[10]It is unclear what standard for willfulness the district court applied to the individual claimants at trial, but its conclusion of law "U" ("All of the actions were known by and under the direction of . . . Gopin and are therefore willful and deliberate.") can be read to equate knowing with willful.

27

decision, either at the hearing or in the order it later entered. Gopin argues that imposing the maximum penalty is excessive and constitutes an abuse of discretion.

{56} Since we are reversing the entire judgment, we will not consider the issue on the merits.[11] We note, however, that the lack of any rationale from the district court could well have led us to remand for an explanation sufficient to allow review. *See State ex rel. Human Servs. Dep't v. Coleman*, 1986-NMCA-074, ¶ 26, 104 N.M. 500, 723 P.2d 971, *abrogated on other grounds by State v. Alberico*, 1993-NMSC-047, 116 N.M. 156, 861 P.2d 192. On remand, if the trial court reaches the stage of considering a penalty, it should provide an explanation of all factors leading to its decision. The explanation should take into consideration the purpose of the UPA plus the "enormity and nature of the wrong and any aggravating circumstances." *Green Tree Acceptance, Inc. v. Layton*, 1989-NMSC-006, ¶ 9, 108 N.M. 171, 769 P.2d 84. The district court should also keep in mind that there are likely procedural and substantive due process implications to how it arrives at its decision and to its final determination. *Aken*, 2002-NMSC-021, ¶¶ 13, 20 (discussing procedural and substantive due process as they relate to punitive damages).

---

[11]An argument could be made that under *Aken v. Plains Electric Generation & Transmission Cooperative, Inc.*, 2002-NMSC-021, ¶ 17, 132 N.M. 401, 49 P.3d 662, our review should be de novo; but, again, we need not deal with that question here.

28

## C. PROCEEDINGS ON REMAND

{57} We are fully aware of the implications of our decision to reverse in this case. The matter was the subject of ongoing—albeit improperly truncated—litigation for over four years. Much of the factual development necessary to decide the case has likely occurred. Our reversal will allow Gopin to bring to bear whatever new facts and arguments he may be able to muster as to whether his acts constitute a violation of the UPA and the issue of willfulness. We see no need for the parties to repeat the trial that has already been held. The district court can rely on the testimony already provided. But we leave the process of evidentiary production to the district court to determine.

{58} Gopin will not be allowed to argue that attorneys as a profession are not subject to the UPA. He failed to make the argument previously, and this remand is not an opportunity to make the argument for the first time. *See Grassie v. Roswell Hosp. Corp.*, 2011-NMCA-024, ¶¶ 84-87, 150 N.M. 283, 258 P.3d 1075.

{59} Finally, we urge the parties and the district court to clarify and specify which provisions of the UPA are at work and how they apply. The orders entered previously refer vaguely to UPA violations with no detail. The asserted violations flowing from Gopin's advertising are relatively clear, but others, *e.g.*, the form of Gopin's retainer agreement and the relationship with the chiropractor, are more obscure. Identification

of the provisions violated would be very helpful if the matter returns for further appeals.

**CONCLUSION**

{60}     The matter is reversed and remanded for further proceedings consistent with this Opinion.

{61}     **IT IS SO ORDERED.**


_____
                              **MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Chief Judge**


_____
**LINDA M. VANZI, Judge**