IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2018-NMSC-023

Filing Date:  March 5, 2018

Docket No.  S-1-SC-34929

JERALD W. FREEMAN, THE TEA
LEAF INC., THOMAS NYGARD, INC.,

     Plaintiffs-Appellees,

v.

PAUL W. FAIRCHILD, JR.,

     Defendant/Cross-Claimant-Respondent,

v.

RICHARD H. LOVE, R.H. LOVE
GALLERIES, INC.,

     Defendants-Petitioners.

ORIGINAL PROCEEDING ON CERTIORARI
Barbara J. Vigil, District Judge

Coberly & Martinez, LLP
Todd A. Coberly
Santa Fe, NM

For Petitioners

Thompson, Hickey, Cunningham, Clow, April & Dolan, P.A.
David F. Cunningham
Brenden J. Murphy
Santa Fe, NM

For Respondent

## OPINION

1

**MAES, Justice.**

**{1}** Paul W. Fairchild Jr. asked the district court to grant summary judgment on his cross-claims against Defendants Richard H. Love and R.H. Love Galleries, Inc. (collectively Love) on the ground that Love failed to timely file a response to Fairchild's motion for summary judgment and was therefore "in default." Love, whose counsel had withdrawn while the motion was pending, explained that he lacked legal representation and had been experiencing health problems, and he requested an opportunity to submit a late response. The district court did not allow Love additional time to respond and granted Fairchild's motion for summary judgment without considering whether Fairchild had established a prima facie case for summary judgment under Rule 1-056 NMRA.

**{2}** We hold that the district court erred by granting summary judgment. A district court may not grant summary judgment solely because the non-moving party has failed to file a response. Prior to granting an uncontested motion for summary judgment, the district court must assess whether the moving party has demonstrated that no genuine issue of material fact exists "and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C). We also hold that the Court of Appeals erred in its application of the right for any reason doctrine to affirm the district court. *See Freeman v. Fairchild*, 2015-NMCA-001, ¶ 32, 340 P.3d 610. We reverse the summary judgment order and vacate the resulting award of damages, and we remand to the district court with instructions to permit Love to file a response to Fairchild's motion for summary judgment and for further proceedings.

## I. BACKGROUND

### A. Factual Background

**{3}** Jerald W. Freeman, The Tea Leaf, Inc., and Thomas Nygard, Inc. (collectively Plaintiffs) jointly owned a painting by Albert Bierstadt that they had purchased for $180,000. In October 2002, three transactions involving the Bierstadt painting occurred in quick succession. First, Freeman agreed on behalf of Plaintiffs to sell the painting to Paul Benisek for $240,000, to be paid in twelve monthly installments. Second, Benisek agreed to sell the painting to Love for $300,000, also to be paid in twelve monthly installments. Finally, Love sold the painting to Fairchild for $375,000, which Fairchild paid in full with a combination of cash and the trade-in of three other pieces of artwork.

**{4}** In accordance with their respective agreements, Love made several payments to Benisek, and Benisek made several payments to Freeman. But in spring 2003, Love experienced financial trouble and stopped making payments to Benisek, who in turn stopped making payments to Freeman. Meanwhile, Fairchild consigned the Bierstadt painting for sale at a gallery in New York City. Freeman, who had not received full payment from Benisek, became aware that the New York gallery was attempting to sell the Bierstadt painting and asked the gallery to ship the painting to Santa Fe for inspection. Freeman obtained possession of the Bierstadt painting and refused to return it to the gallery.

**B.      Procedural Background**

**{5}**      Freeman initiated this lawsuit in June 2005, seeking a declaratory judgment to determine ownership of the Bierstadt painting and asserting other claims against Benisek, Love, and Fairchild.  Freeman later amended his complaint to add the other plaintiffs.  In May 2006, Fairchild filed counterclaims against Plaintiffs and cross-claims against Love for fraud, negligent misrepresentation, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/2 (1973) (Illinois Consumer Fraud Act).

**{6}**      Fairchild's cross-claims against Love are the only claims at issue in the appeal before this Court.  For over five years, the only litigation that occurred between Fairchild and Love beyond the pleadings consisted of Fairchild's initial set of discovery requests, to which Love responded.  During this time, however, extensive litigation and discovery occurred between Plaintiffs and Love and between Plaintiffs and Fairchild, including numerous pretrial motions and depositions in several states.  Six different district court judges presided over this case between 2005 and 2010.

**{7}**      On January 28, 2011, Love's New Mexico counsel, who had represented Love in this case for over five years, filed a motion to withdraw, stating that it would be "impossible" to continue representing Love.  The district court granted the motion on February 24, 2011.  On April 19, 2011, a new attorney entered an appearance to represent Love.

**{8}**      Several weeks later, on May 16, 2011, Fairchild filed a motion for partial summary judgment on his cross-claims against Love for fraud, negligent misrepresentation, and violation of the Illinois Consumer Fraud Act.  According to the parties, Fairchild's counsel agreed to give Love's new counsel a two-week extension of time to file a response to Fairchild's motion for summary judgment, but we find no indication in the record that Love's new counsel requested an extension from the district court.  In any event, Love's new counsel did not file a response, and on June 9, 2011, less than two months into the representation, Love's new counsel moved to withdraw.  The motion to withdraw stated that continuing the representation would risk a conflict of interest, that Love had violated agreements with the attorney's law firm, and that Love had "repeatedly failed to respond to emails, correspondence, and telephone calls."  The motion to withdraw listed several upcoming court dates and stated that Love had been informed "of the procedural status of" the case, but the motion did not specifically refer to Fairchild's pending motion for summary judgment.  On June 13, 2011, the district court issued an order that granted the motion to withdraw.  The order did not identify the pending motion for summary judgment.

**{9}**      On July 12, 2011, Fairchild filed a request for an expedited hearing on his motion for summary judgment against Love.  The district court held a hearing on August 2, 2011.  At the hearing, Fairchild's counsel asserted that Love had failed to file a response and that the response deadline had "passed by many weeks."  Fairchild's counsel offered to address the substance of the motion but argued that Fairchild was entitled to summary judgment as a

3

procedural matter because Love was "in default." Love did not retain counsel prior to the hearing and appeared pro se by telephone from Illinois. Love informed the court that he had not been fully aware of the proceedings because he did not have legal representation and had been experiencing health problems, including hospitalization. Love asserted that his failure to respond had not been intentional, apologized for his lack of awareness, and asked the district court to consider giving him an opportunity to respond. The district court denied Love's request for more time to respond and granted Fairchild's motion for summary judgment on procedural grounds without addressing the substance of the motion, concluding that Fairchild's motion should be granted because Love had failed to file a response.

{10}    In early October 2011, the district court held a two-day bench trial to determine the amount of damages Love owed Fairchild. Love had not yet retained counsel and participated pro se by telephone from Illinois. The district court awarded Fairchild $1,942,446 in compensatory damages, which included Fairchild's attorney fees, costs, and prejudgment interest. The district court also awarded Fairchild $9,712,232 in punitive damages, an amount equal to five times the compensatory damages.

{11}    Love retained appellate counsel and filed an appeal. The Court of Appeals held "that it was error for the district court to grant Fairchild's motion for summary judgment solely on the basis of Love's failure to respond to the motion." *Freeman*, 2015-NMCA-001, ¶ 32. The Court of Appeals explained that "[t]he district court should have deemed admitted the facts alleged in Fairchild's motion and then determined whether those facts made a prima facie showing of entitlement to summary judgment." *Id.* Despite this error, the Court of Appeals affirmed the district court by determining—in the first instance on appeal—that Fairchild had established "a prima facie case of entitlement to summary judgment." *Id.* In doing so, the Court of Appeals relied on the right for any reason doctrine. *Id.* The Court of Appeals also affirmed the district court's award of damages to Fairchild. *Id.* ¶ 47. The Court of Appeals observed that "it does seem extraordinary that Fairchild should be awarded in excess of $11 million for the fraudulent sale of a painting worth in the neighborhood of $400,000," but the Court declined to "analyze Love's arguments" because "Love failed to preserve his arguments in the district court." *Id.* ¶ 39.

{12}    Love filed a petition for writ of certiorari, asking this Court to review two issues: (1) whether the Court of Appeals erred by affirming summary judgment under the right for any reason doctrine without addressing all of the elements of Fairchild's cross-claims, which are grounded in Illinois law; and (2) whether the district court committed fundamental error by awarding Fairchild $11.6 million in a dispute over a painting worth $375,000 where the Illinois statute on which the award was predicated did not allow the requested relief. We granted certiorari under Article VI, Section 3 of the New Mexico Constitution and NMSA 1978, Section 34-5-14(B) (1972).

## II.    DISCUSSION

**A.    The District Court Erred by Granting Fairchild's Motion for Summary**

4

**Judgment on the Ground That Love Failed to Timely File a Response**

**{13}**     We first consider whether the district court erred by granting Fairchild's motion for summary judgment against Love.  Our analysis includes two components: (1) whether the district court erred by granting summary judgment based solely on Love's failure to timely file a response, and (2) whether the district court erred by denying Love's request for an extension of time to file a response.  Love argues that the district court erred by granting summary judgment without following the procedures set forth in *Lujan v. City of Albuquerque*, 2003-NMCA-104, 134 N.M. 207, 75 P.3d 423.  Love also contends that the district court failed to give Love a meaningful opportunity to demonstrate that his failure to timely respond was the result of excusable neglect, which justified a time extension. Fairchild argues that the district court complied with the requirements of *Lujan*, 2003-NMCA-104, and that the district court acted within its discretion to deny Love's request for an extension of time.

**1.     Standard of Review**

**{14}**     We review the district court's grant of summary judgment de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280.  On appeal, we "view the facts in a light most favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the merits." *Id.* (internal quotation marks and citation omitted).

**{15}**     "We generally apply an abuse of discretion standard to determine whether the district court erred in denying [an] extension of time [to file a response] based on an absence of excusable neglect." *Skeen v. Boyles*, 2009-NMCA-080, ¶ 42, 146 N.M. 627, 213 P.3d 531. But "[t]he nature of our review is affected by the nature of the order entered by the district court.  Our review is more exacting when the order being reviewed grants some sort of final relief without consideration of the merits of a claim or defense." *Id.* ¶ 43.

**2.     The District Court Failed to Consider Whether Fairchild Met the Burden Required of the Moving Party Under Rule 1-056**

**{16}**     New Mexico courts disfavor summary judgment and "consider it a drastic remedy to be used with great caution." *Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 6, 310 P.3d 611 (internal quotation marks and citation omitted).  Despite New Mexico's cautious approach to summary judgment, it is appropriate for the district court to grant summary judgment "when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ciup v. Chevron U.S.A., Inc.*, 1996-NMSC-062, ¶ 7, 122 N.M. 537, 928 P.2d 263; *see* Rule 1-056(C).  To obtain summary judgment, the moving party must meet an "initial burden of establishing a prima facie case." *Romero*, 2010-NMSC-035, ¶ 10.  A prima facie case is one supported by sufficient evidence "to raise a presumption of fact or establish the fact in question unless rebutted." *Id.* (internal quotation marks and citation omitted).  If the moving party establishes a prima facie case,

"the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted); *see also* Rule 1-056(E) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). If the non-moving party "does not so respond, summary judgment, if appropriate, shall be entered" in favor of the moving party. Rule 1-056(E).

{17} Under Rule 1-056 and New Mexico case law, the district court cannot rely on the non-moving party's failure to timely respond as the sole basis for granting a motion for summary judgment. *See Brown v. Taylor*, 1995-NMSC-050, ¶ 8, 120 N.M. 302, 901 P.2d 720 ("The moving party may not be entitled to judgment even if the non-moving party totally fails to respond . . . ."). Before granting summary judgment, "the district court must assess [despite the lack of a response] whether, on the merits, the moving party satisfied the burden under Rule 1-056(C)." *Atherton v. Gopin*, 2015-NMCA-003, ¶ 24, 340 P.3d 630 (alteration in original) (internal quotation marks and citation omitted); *see also Brown*, 1995-NMSC-050, ¶ 8 ("The burden is on the moving party to show an absence of a genuine issue of fact, and that it was entitled as a matter of law to judgment in its favor."). In this case, the district court erred by granting summary judgment as a procedural matter without assessing the merits of Fairchild's motion.

{18} Love argues that under *Lujan*, the district court cannot grant summary judgment in the absence of a response without considering "(1) the degree of actual prejudice to the [opposing party], (2) the amount of interference with the judicial process, and (3) the culpability of the litigant." 2003-NMCA-104, ¶ 12 (alteration in original) (internal quotation marks and citation omitted). We disagree with Love's construction of *Lujan* and take this opportunity to clarify that these factors come into play only if the district court is considering whether to grant a motion for summary judgment as a sanction for abusive litigation conduct.

{19} In *Lujan*, the Court of Appeals recognized that in an extreme case, the district court may grant summary judgment as a sanction. *See id.* ¶¶ 10-11. The defendants filed motions for summary judgment, and the plaintiffs failed to file any response or seek an extension of time. *Id.* ¶ 3. The district court dismissed the plaintiffs' complaint with prejudice, citing the plaintiffs' failure to timely respond as the reason for dismissal. *Id.* ¶ 4. On appeal, the Court of Appeals considered whether it was appropriate for the district court to dismiss the plaintiffs' claims as a sanction for failure to respond. *Id.* ¶¶ 13-14. The Court of Appeals cited an array of New Mexico authority and concluded that the "district court has authority to dismiss claims with prejudice for a party's failure to prosecute or to comply with procedural rules or court orders." *Id.* ¶ 10. Under some circumstances, the Rules of Civil Procedure for the District Courts provide express authority for the district court to sanction a litigant by entering a dismissal or final judgment. *Id.*; *see, e.g.*, Rule 1-037(B)(2)(c) NMRA (permitting the district court to dismiss claims or enter a judgment of default as a sanction for a party's failure to comply with a discovery order); Rule 1-041(B) NMRA

6

(permitting the district court to dismiss the plaintiff's claims for failure "to prosecute or to comply with these rules or any order of court"). And if a party's litigation abuses fall outside the sanction authority expressly set forth in our procedural rules, "the court may rely on its inherent powers" to impose sanctions. *Gonzales v. Surgidev Corp.*, 1995-NMSC-047, ¶ 23, 120 N.M. 151, 899 P.2d 594; *see also State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 1995-NMSC-033, ¶¶ 11-12, 120 N.M. 1, 896 P.2d 1148 (explaining that the sanction provisions in the procedural rules do not displace the courts' inherent power to impose sanctions "to regulate their docket, promote judicial efficiency, and deter frivolous filings" (internal quotation marks and citation omitted)); *Rest. Mgmt. Co. v. Kidde-Fenwal, Inc.*, 1999-NMCA-101, ¶¶ 13, 20, 24, 127 N.M. 708, 986 P.2d 504 (recognizing the district court's authority to dismiss claims in the exercise of its inherent power).

**{20}** Although courts have inherent authority to grant summary judgment as a sanction, a sanction resulting in dismissal or final disposition of a claim is severe and "must be reserved for the extreme case and used only where a lesser sanction would not serve the ends of justice." *Lujan*, 2003-NMCA-104, ¶ 11; *see also Baca*, 1995-NMSC-033, ¶ 25 (emphasizing "that a court should invoke its inherent powers sparingly and with circumspection"). The Court of Appeals thus held in *Lujan* that mere failure to respond did not justify the severe sanction of dismissal and reversed the grant of summary judgment. 2003-NMCA-104, ¶¶ 13, 20. Additionally, to assist New Mexico courts in determining whether summary judgment should be granted as a sanction for abusive litigation conduct, *Lujan* adopted the sanction analysis used by the Tenth Circuit Court of Appeals. *See id.* ¶ 12. Specifically, "the district court must consider: (1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002); *see Lujan*, 2003-NMCA-104, ¶ 12.

**{21}** New Mexico courts, like federal courts, have two possible alternatives for granting a motion for summary judgment in the absence of a response from the non-moving party. *See Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (summarizing the two options available to the federal district court). First, the district court may grant summary judgment if the moving party has made a prima facie case of entitlement to summary judgment and the non-moving party has failed to respond despite adequate notice and opportunity to be heard. *See id.* (explaining that the federal district court "cannot grant summary judgment unless the moving party has met its initial burden of production under Rule 56"); *Lujan*, 2003-NMCA-104, ¶¶ 17-18 (explaining that notice and opportunity to be heard are "particularly important" because the district court cannot grant summary judgment without determining whether "the moving party satisfied the burden under Rule 1-056(C)"). Alternatively, the district court may grant summary judgment as a sanction for abusive litigation conduct after performing an explicit sanction analysis. *See Issa*, 354 F.3d at 1177 (stating that the federal "district court may grant summary judgment as a sanction . . . only after performing an explicit [sanction] analysis"); *Lujan*, 2003-NMCA-104, ¶ 12 (adopting the sanction analysis used in the Tenth Circuit). If the district court determines that summary judgment should be granted as a sanction, the district court must make specific findings of fact and

conclusions of law to support its decision. *See Rest. Mgmt. Co.*, 1999-NMCA-101, ¶¶ 23-24 (explaining that specific findings of fact and conclusions of law are necessary for appellate review of the district court's exercise of its inherent power to impose sanctions); *see also Lujan*, 2003-NMCA-104, ¶¶ 12-13 (concluding that the district court should be reversed because the court failed to provide a sufficient basis for its order of dismissal).

**{22}** In this case, the district court granted Fairchild's motion for summary judgment as a procedural matter because Love failed to timely file a response. The district court did not consider whether Fairchild met the initial burden of demonstrating that there was "no genuine issue as to any material fact" and that he was "entitled to a judgment as a matter of law." Rule 1-056(C). And neither the expedited hearing transcript nor the summary judgment order indicates that the district court was exercising its inherent power to sanction Love for abusive litigation conduct. The district court did not perform an explicit sanction analysis or make any findings regarding Love's culpability, actual prejudice to Fairchild, or interference with the judicial process. We hold that the district court erred by granting Fairchild's motion for summary judgment based solely on Love's failure to timely file a response.

3.      **The District Court Failed to Give Love an Adequate Opportunity to File a Late Response or to Demonstrate Excusable Neglect**

**{23}** We next consider whether the district court erred by denying Love's request for an extension of time to file a response to Fairchild's motion for summary judgment. The time limits for filing a response are set forth in the New Mexico Rules of Civil Procedure for the District Courts. Under those rules, a party opposing a motion for summary judgment must file a response within fifteen days after service of the motion. *See* Rule 1-007.1(D) NMRA ("Unless otherwise specifically provided in these rules, any written response and all affidavits, depositions or other documentary evidence in support of the response shall be filed within fifteen (15) days after service of the motion."); Rule 1-056(D)(2) ("A party opposing the motion shall, within fifteen (15) days after service of the motion, submit to the court a written memorandum containing a short, concise statement of the reasons in opposition to the motion with authorities."). If a party requests a time extension after the response deadline has passed, the district court may grant an extension if the party's failure to respond was the result of excusable neglect. *See* Rule 1-006(B)(1)(b); *see also Atherton*, 2015-NMCA-003, ¶ 27 (recognizing that the district court may grant an extension based on excusable neglect).

**{24}** Although the granting of a time extension is a matter within the district court's discretion, the district court must ensure adequate notice and opportunity to be heard before granting a motion for summary judgment without a response from the non-moving party. In *Lujan*, the Court of Appeals concluded that if the moving party wants the district court to grant summary judgment in the absence of a response, the moving party should file a separate written motion and allow the non-moving party fifteen days to respond. 2003-NMCA-104, ¶ 17. The Court of Appeals adopted this procedure despite language in

Rule 1-007.1(D) NMRA (2000), which stated that a failure to timely file a response "constitutes consent to grant the motion, . . . and the court may enter an appropriate order." *See Lujan*, 2003-NMCA-104, ¶¶ 15-17. In 2008, Rule 1-007.1(D) was amended to provide that "[i]f a party fails to file a response within the prescribed time period the court may rule with or without a hearing."

**{25}** Regardless of which version of Rule 1-007.1 applies, we conclude that the procedure set forth in *Lujan* ensures adequate notice and opportunity to be heard prior to the entry of summary judgment in the absence of a response. Rule 1-007.1 must be applied in a manner consistent with Rule 1-056 and New Mexico's strong preference for resolving cases on their merits. *See Lujan*, 2003-NMCA-104, ¶ 17; *see also Blauwkamp v. Univ. of N.M. Hosp.*, 1992-NMCA-048, ¶ 10, 114 N.M. 228, 836 P.2d 1249 ("Summary judgment is a drastic remedial tool which demands the exercise of caution in its application."). If the non-moving party receives adequate notice and opportunity to be heard and either (1) fails to request a time extension, or (2) requests an extension but fails to demonstrate excusable neglect under Rule 1-006(B)(1)(b), then the district court may rule on the uncontested motion for summary judgment by determining whether the moving party has made a prima facie showing under Rule 1-056.

**{26}** In this case, Fairchild did not follow the procedure set forth in *Lujan* for ensuring that Love had adequate notice and an opportunity to be heard prior to the entry of judgment. Instead, Fairchild requested an expedited hearing, and at the hearing, Fairchild asked the district court to enter a "default" judgment. Love responded that he lacked legal representation and had not been aware of the proceedings because he had been in the hospital and had not been receiving mail on a regular basis. Love admitted "to some kind of negligence . . . by not being more receptive to what was going on," but explained that he "had open heart surgery and found it difficult to be receptive to what the rest of the world was doing." Love acknowledged that he was "not speaking eloquently as an attorney" but explained that it was "disconcerting to have summary judgment brought against you and not realize how it all came about." In reply, Fairchild's counsel argued that Love had been served with all of the relevant papers and that Love's heart surgery was not "a legitimate issue" because it had occurred months earlier. Fairchild's counsel complained that Fairchild had "been suffering through this [case] for almost six years" and that it was "time to bring liability to a head." Love attempted to speak further but was silenced by the district court judge. Without further presentation from the parties, the district court ruled as follows:

> I find that this case has been pending for approximately six years, over six years. Throughout these proceedings there have been numerous hearings, pleadings, positions presented to the Court. Time has come now to rule on Mr. Fairchild's Motion for Summary Judgment against Love . . . . I find that there is not a sufficient basis upon which to allow Mr. Love additional time in which to respond. Because there has not been a substantive response to the motion, under the Rules [of Civil Procedure for the District Courts] I find that the motion shall be granted.

**{27}** We conclude that Love should have been afforded more time to respond prior to any entry of judgment. Love's counsel, who entered this case less than a month before Fairchild filed his motion for summary judgment, failed to timely file a response or to move the district court for an extension of time. After the response deadline passed, Love's counsel sought and obtained leave of court to withdraw from this case. Neither the motion to withdraw nor the order permitting withdrawal referenced or made provisions for responding to the pending summary judgment motion. *See generally* Rule 1-089(B) NMRA (stating that the district "court may place conditions on an order approving withdrawal as justice requires"). After the district court granted Fairchild's motion for summary judgment, Love explained that he had been trying to retain substitute counsel but that several attorneys had told him that his case was "too large and complex for anyone to take on immediately." Additionally, the record on appeal confirms that Love had a variety of health problems in 2010 and 2011, including Parkinson's disease and multiple surgeries and hospitalizations. Finally, although the district court was justifiably concerned that this case had been pending for over six years, the vast majority of the litigation did not involve Fairchild's cross-claims against Love, and Fairchild's motion for summary judgment against Love had been pending for only a couple of months. We hold that the district court should have granted Love an extension of time to file a response or, at a minimum, an opportunity to substantiate his claim that his failure to respond was the result of excusable neglect.

### B. The Court of Appeals Erred by Affirming the District Court

**{28}** Having concluded that the district court erred by granting summary judgment based solely on Love's failure to file a response, we consider whether the Court of Appeals erred by holding that Fairchild established "a prima facie case of entitlement to summary judgment" and affirming "on the ground that the district court was right for another reason." *Freeman*, 2015-NMCA-001, ¶ 32. Fairchild argues that it was proper for the Court of Appeals to apply the right for any reason doctrine and that by doing so, the Court of Appeals cured any error in the district court. Love argues that the Court of Appeals erred by relying on the right for any reason doctrine.

#### 1. Standard of Review

**{29}** We review the Court of Appeals' application of the right for any reason doctrine for abuse of discretion. *See Beggs v. City of Portales*, 2013-NMCA-068, ¶ 32, 305 P.3d 75. We will find an abuse of discretion if a court's ruling "is clearly untenable or contrary to logic and reason." *State ex rel. King v. B & B Inv. Group, Inc.*, 2014-NMSC-024, ¶ 28, 329 P.3d 658 (internal quotation marks and citation omitted). Additionally, a court abuses its discretion if it "applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Mintz v. Zoernig*, 2008-NMCA-162, ¶ 17, 145 N.M. 362, 198 P.3d 861 (internal quotation marks and citation omitted); *see also N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (stating that a decision premised on a misapprehension of the law may be characterized as an abuse of discretion).

## 2. The Court of Appeals' Application of the Right for Any Reason Doctrine Constituted an Abuse of Discretion

**{30}** Under the right for any reason doctrine, an appellate court may affirm a district court ruling on a ground not relied upon by the district court if (1) "reliance on the new ground would [not] be unfair to [the] appellant," and (2) there is substantial evidence to support the ground on which the appellate court relies. *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (internal quotation marks and citation omitted). "When applying the right for any reason rationale, appellate courts must be careful not to assume the role of the trial court [by delving] into fact-dependent inquiries." *Atherton*, 2015-NMCA-003, ¶ 36 (internal quotation marks and citation omitted).

**{31}** Love argues that the Court of Appeals erred by concluding that Fairchild established a prima facie case of entitlement to summary judgment on his cross-claims, which arise under Illinois law. Regarding Fairchild's claims for fraud and negligent misrepresentation, Love argues that Fairchild failed to assert facts demonstrating that Fairchild was justified in relying on Love's alleged misrepresentation. *See Schrager v. N. Cmty. Bank*, 767 N.E.2d 376, 386 (Ill. App. Ct. 2002) ("Failure to prove justifiable reliance is fatal to claims of fraudulent misrepresentation, negligent misrepresentation and fraudulent concealment of material fact."). Regarding Fairchild's Illinois Consumer Fraud Act claim, Love argues that Fairchild failed to demonstrate that his claim falls within the scope of the Act by satisfying the "consumer nexus test." *See Brody v. Finch Univ. of Health Sci./The Chicago Med. Sch.*, 698 N.E.2d 257, 268-69 (Ill. App. Ct. 1998) (explaining that the Illinois Consumer Fraud Act does not "encompass all commercial transactions" and that in some cases the plaintiff must satisfy "the consumer nexus test" to demonstrate that the claim "implicates consumer protection concerns" (internal quotation marks and citation omitted)).

**{32}** Love also argues that the Court of Appeals failed to acknowledge that the record on appeal contains disputed issues of material fact that should have foreclosed summary judgment on Fairchild's cross-claims against Love. Specifically, at a summary judgment hearing in 2010, the district court found that the following material facts pertaining to Love's relationship with Fairchild were in dispute:

> What is Mr. Fairchild's status as a collector or a dealer; whether there was honesty, in fact, in [the] transaction [between Mr. Love and Mr. Fairchild]; what is [Mr. Fairchild's] role with Mr. Love, whether that was a joint venture, an agency relationship, a partnership; and did [Mr. Fairchild] have a duty to investigate the ownership of the painting in being an art collector; and what was the value, actually, given by Mr. Fairchild when he considered the price of the painting and what he paid for it?

Love asserts that these disputed issues of fact are material to whether Love can be held liable to Fairchild for fraud or negligent misrepresentation and that these disputed issues of fact directly implicate the elements required to satisfy the consumer nexus test under the Illinois

11

Consumer Protection Act.

**{33}** We conclude that the Court of Appeals erred by applying the right for any reason doctrine to affirm summary judgment in Fairchild's favor. First, the Court of Appeals applied incorrect substantive law to Fairchild's cross-claims for fraud and negligent misrepresentation. To determine whether a party has made a prima facie showing of entitlement to summary judgment, "the court must look to the substantive law governing the dispute." *Romero*, 2010-NMSC-035, ¶ 11 (internal quotation marks and citation omitted). In his motion for summary judgment, Fairchild asserted that Illinois law applied to his cross-claims against Love because all of the events giving rise to the cross-claims occurred in Illinois. *See generally Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶ 12, 140 N.M. 293, 142 P.3d 374 ("In determining which jurisdiction's law should apply to a tort action, New Mexico courts follow the doctrine of *lex loci delicti commissi*—that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred."). On appeal, the parties agree that Illinois law applies to Fairchild's cross-claims. But the Court of Appeals applied New Mexico law, not Illinois law, to Fairchild's cross-claims for fraud and negligent misrepresentation. *See Freeman*, 2015-NMCA-001, ¶¶ 33-35. The application of incorrect substantive law constituted an abuse of discretion. *See N.M. Right to Choose/NARAL*, 1999-NMSC-028, ¶ 7.

**{34}** Additionally, Love did not have an opportunity to controvert the facts in Fairchild's motion because the district court denied his request for an extension of time and failed to give him an adequate opportunity to substantiate his claim of excusable neglect. The Court of Appeals considered a similar situation in *Atherton*. In *Atherton*, the defendant sought an extension of time to respond to a motion for summary judgment, explaining that he failed to timely respond because he "had been seeking counsel and insurance coverage." 2015-NMCA-003, ¶ 8. The district court denied the extension because the court thought that *Lujan*, 2003-NMCA-104, precluded the court from considering the reasons for the defendant's failure to timely respond. *Atherton*, 2015-NMCA-003, ¶¶ 8, 22. On appeal, the Court of Appeals concluded that the district court misinterpreted *Lujan* and clarified that *Lujan* did not "negate the applicability of our concept of excusable neglect." *Atherton*, 2015-NMCA-003, ¶¶ 22, 27. The Court of Appeals explained that a failure to timely respond does not result in a waiver of the right to respond under New Mexico law, *id.* ¶¶ 25-26, and that such a "draconian procedure . . . would be antithetical to our strong bent in favor of deciding matters on their merits," *id.* ¶ 27. The Court of Appeals reversed the grant of summary judgment without examining the rest of the record. *Id.* ¶ 32. The Court of Appeals declined to apply the "right for any reason rationale" because doing so would require the Court "to speculate that there was no factual presentation [the non-moving party] could have made in response to the motion for partial summary judgment that could have swayed the district court." *Id.* ¶ 37. In this case, as in *Atherton*, we conclude that it would be unreasonable and unfair to Love to consider the merits of Fairchild's motion for summary judgment in the first instance on appeal without giving Love an opportunity to dispute the facts alleged in the motion. "If there is the slightest doubt as to the existence of material factual issues, summary judgment should be denied." *Garcia-Montoya v. State Treasurer's*

12

*Office*, 2001-NMSC-003, ¶ 7, 130 N.M. 25, 16 P.3d 1084.

**{35}** Finally, we conclude that this case is not well-suited to application of the right for any reason doctrine due to the voluminous record on appeal and the fact-dependent nature of Fairchild's cross-claims. *See Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 9, 335 P.3d 1243 (explaining that in the summary judgment context, the appellate court considers "the whole record on review, considering the facts in a light most favorable to the nonmoving party and drawing all reasonable inferences in support of a trial on the merits"). The appellate court would need to undertake a fact-dependent inquiry to accurately determine whether Fairchild made a sufficient prima facie showing under Illinois law. *See Meiboom*, 2000-NMSC-004, ¶ 20 (stating that the appellate court should not delve into fact-dependent inquiries). The district court is the appropriate forum to determine the merits of Fairchild's motion for summary judgment in the first instance. *See Atherton*, 2015-NMCA-003, ¶¶ 33-39 (declining to "comb the record" and concluding that the district court was best situated to consider the plaintiffs' claims on a fuller record).

**{36}** We hold that the Court of Appeals abused its direction in applying the right for any reason doctrine to affirm the district court. Accordingly, we reverse the grant of summary judgment and remand to the district court for further proceedings. On remand, the district court is instructed to grant Love an appropriate amount of time to file a response to Fairchild's motion for summary judgment. *Cf.* Rule 1-056(D)(2) (providing that a response shall be filed within fifteen days after service of the motion).

**C.    We Vacate the Damages Award that Resulted from the Erroneous Grant of Summary Judgment**

**{37}** The district court awarded Fairchild $1,942,446 in compensatory damages and $9,712,232 in punitive damages. The compensatory damages award did not include compensation for the loss of the Bierstadt painting because Fairchild had already received payment for the painting under a settlement agreement with Plaintiffs.[1] Instead, the compensatory damages award included (1) the potential interest that Fairchild could have earned on the cash and trade-ins that he used to buy the Bierstadt painting, compounded at a rate of 9.6% per year; (2) compensation for 1000 hours that Fairchild personally spent working on this case, calculated at a "paralegal rate" of $75 per hour for a total of $75,000; (3) attorney fees and costs incurred by Fairchild's New Mexico counsel and by a law firm in Chicago; and (4) the potential interest that Fairchild could have earned on the money he used to pay attorney fees and costs, compounded at a rate of 9.6% per year.

**{38}** Love contends that the district court erred by awarding Fairchild $11.6 million in

---

[1]In July 2011, Plaintiffs and Fairchild dismissed their claims against each other based on a settlement agreement under which Freeman retained possession of the Bierstadt painting in exchange for paying Fairchild $312,500.

13

damages when the Bierstadt painting was worth only $375,000. Love's primary argument on appeal is that the district court committed fundamental error by awarding Fairchild attorney fees for work performed by the Chicago law firm on matters entirely separate from this case. At the damages trial, Fairchild presented testimony from Chicago attorney Ellen Robins. Robins testified that her law firm performed work for Fairchild pertaining to a total of "20 paintings that Mr. Love had sold Mr. Fairchild" and "an FBI investigation of Mr. Fairchild related to the Love transactions." Based on this testimony, Fairchild argued that the district court should award all of his attorney fees because the work performed by the Chicago law firm on other matters was "all kind of intertwined" with this litigation, including the "FBI portion." The district court granted Fairchild's request for all of his attorney fees.

**{39}** Love argues that Fairchild based his claim for attorney fees on the Illinois Consumer Fraud Act, but that neither the Illinois Consumer Fraud Act nor any other provision of law allows the recovery that Fairchild received. Love acknowledges that the Illinois Consumer Fraud Act permits an award of "reasonable attorney's fees and costs to the prevailing party." 815 Ill. Comp. Stat. Ann. 505/10a(c) (2000), *held unconstitutional on other grounds by Allen v. Woodfield Chevrolet, Inc.*, 802 N.E.2d 752 (Ill. 2003). Love argues, however, that the Illinois Consumer Fraud Act does not allow a litigant to recover fees pertaining to non-Act claims, even when the claims occur within the same litigation. *See Huss v. Sessler Ford, Inc.*, 799 N.E.2d 444, 450 (Ill. Ct. App. 2003) ("The law is clear, under the Illinois Consumer Fraud Act, that a plaintiff is entitled only to reasonable attorney fees and costs and this entitlement is limited to only those fees incurred by the plaintiff that were for work specifically related to the consumer fraud claim." (citations omitted)). *But see Dubey v. Pub. Storage, Inc.*, 918 N.E.2d 265, 283 (Ill. App. Ct. 2009) (stating that "plaintiffs may also recover fees incurred for work on non-[Illinois Consumer Fraud] Act claims when the Act claim is so inextricably intertwined with the non-Act claims that it cannot be distinguished"). Love contends that the overwhelming majority of Fairchild's compensatory damages award was made up of attorney fees that lacked any basis in law. Love further argues that the punitive damages award must be vacated because it was based on the defective compensatory damages award. *See generally Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 36, 140 N.M. 478, 143 P.3d 717 ("[T]he relationship between punitive and compensatory damages is . . . one of the factors we consider in assessing the constitutionality of a punitive damages award.").

**{40}** Love concedes that he did not preserve these arguments in the district court but asks this Court to vacate the damages award based on the fundamental error doctrine. *See* Rule 12-321(B)(2)(c) NMRA (stating that a party may raise an issue for the first time on appeal if the issue involves fundamental error); *see also Estate of Gutierrez ex rel. Jaramillo v. Meteor Monument, LLC*, 2012-NMSC-004, ¶ 33, 274 P.3d 97 (noting that "this Court has applied the doctrine in civil cases under the most extraordinary and limited circumstances"); *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 ("Parties alleging fundamental error must demonstrate the existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine

judicial integrity if left unchecked." (internal quotation marks and citation omitted)).  Love argues that it is fundamental error to award damages based on a statute that does not allow for the relief granted.  *See  Gracia v. Bittner*, 1995-NMCA-064, ¶ 26, 120 N.M. 191, 900 P.2d 351 ("When a statute does not grant a right to relief in a particular situation, it is fundamental error to grant relief based on the statute."); *see also Jaffa v. Lopez*, 1934-NMSC-003, ¶ 30, 38 N.M. 290, 31 P.2d 988 (explaining that this Court had a duty to consider an argument not raised in the district court because it would be fundamental error to allow recovery not permitted by the applicable statute).  Finally, Love argues that allowing Fairchild's exorbitant judgment to stand would encourage attorneys to mislead courts concerning the controlling law when the opposing party is not represented by counsel.

**{41}**    We agree with the Court of Appeals' observation that Fairchild's damages award seems "extraordinary." *See Freeman*, 2015-NMCA-001, ¶ 39.  Despite our concerns, we do not reach the merits of Love's arguments because we reverse the summary judgment order that established Love's liability to Fairchild.  We vacate the damages award because the award was dependent on the grant of summary judgment.

## III.    CONCLUSION

**{42}**    We hold that the district court erred by granting Fairchild's motion for summary judgment and that the Court of Appeals erred by affirming the district court under the right for any reason doctrine.  We reverse the summary judgment order and vacate the resulting award of damages, and we remand to the district court with instructions to permit Love to file a response to Fairchild's motion for summary judgment and for further proceedings consistent with this opinion.

**{43}    IT IS SO ORDERED.**

_____

**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____

**JUDITH K. NAKAMURA, Chief Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**

_____

**JANE SHULER GRAY, Judge, sitting by designation**