The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: October 10, 2023

**No. A-1-CA-40419**

**IN THE MATTER OF THE PROTECTIVE PROCEEDINGS FOR ELIZABETH A., an adult incapacitated person,**

**JOHN E.A.,**

> Petitioner-Appellee,

and

**PATRICIA A.V.**

> Interested Party/Co-Conservator/
> Co-Guardian-Appellant,

and

**JACK D. A.**

> Intervenor/Co-Conservator/
> Co-Guardian,

and

**DAVID MCNEILL, JR.,**

> Guardian Ad Litem,

and

**MATTHEW P. HOLT,**

     Counsel for Elizabeth A.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**James T. Martin, District Court Judge**

Kemp Smith LLP
CaraLyn Banks
Las Cruces, NM

for Appellee

Lakins Law Firm, P.C.
Charles N. Lakins
Albuquerque, NM

for Appellant

**OPINION**

**WRAY, Judge.**

{1}      This case involves the payment of fees to the attorney of an interested party who petitioned for the appointment of a guardian or conservator. The petitioner in the present case (Petitioner), one of the children of Elizabeth A. (Mother), through Appellee CaraLyn Banks (Banks), an attorney, filed a petition for the appointment of a guardian and conservator for Mother under Article 5 of the New Mexico Uniform Probate Code, "Protection of Persons Under Disability and Their Property," NMSA 1978, §§ 45-5-101 to -436 (1975, as amended through 2022) (Article 5). Banks' fees had been paid by the temporary conservator until interested parties objected. After protracted proceedings, the district court ordered Banks' fees to be paid from funds from Mother's estate (Mother's Estate or the Estate). On appeal, Appellant Patricia Vandver (Current Guardian), whom the district court eventually appointed to be co-guardian and co-conservator, argues that the district court was without authority to order Mother's Estate to pay Banks' attorney fees. To the contrary, however, Article 5 conservators may expend reasonably necessary sums for the benefit of a protected person after considering the impact such expenditures would have on the protected person's care and finances. *See* § 45-5-425(A)(2). The district court found, among other things, that Banks' actions were necessary and taken for Mother's benefit and that the bills were reasonable, and no party suggested

that paying the bills would be detrimental to Mother. We therefore affirm, although on a different basis, the district court's order to pay Banks' bills. Because we affirm, Current Guardian's motion in this Court to stay collection of the judgment is denied as moot.

**BACKGROUND**

{2}     It is difficult to disagree with the assessment of the court-appointed guardian ad litem that the present case was "complex and time consuming." Mother had six children (collectively, Siblings), including Current Guardian and Petitioner. In 2017, Mother granted another son (Intervenor) a durable power of attorney. In the summer of 2020, Petitioner became concerned about Mother's decline in health and capacity. Shortly thereafter, on Petitioner's behalf, Banks filed a petition for the appointment of a temporary and permanent guardian and conservator.

{3}     The district court granted the petition for a temporary guardian and conservator; ordered that "any [p]owers of [a]ttorney that [Mother] may have executed prior" were "[n]ull and [v]oid"; and appointed a temporary guardian and conservator, a visitor, a qualified healthcare provider, and a guardian ad litem. All six Siblings were involved in the proceedings, and four were individually represented by counsel at various points throughout. Additionally, counsel (Mother's Attorney)—apart from the guardian ad litem—appeared on Mother's behalf.

{4}     In the first few months of the proceeding, Banks submitted to the temporary conservator at least one bill for legal services, which was paid from Mother's Estate. Mother's Attorney, however, filed a motion to protect the assets of the Estate. The district court reserved ruling on the motion but ordered the temporary conservator to refrain from paying Banks' bills. The hearing on the petition for a permanent guardian and conservator was held over the course of nine months, and at its completion, the district court appointed Current Guardian and Intervenor as co-guardians and co-conservators. The district court reasoned that Mother had granted Intervenor a power of attorney to act on her behalf and that the Siblings' recently deceased father had selected Current Guardian to act as power of attorney with regard to certain benefits he had received. At the same time, the district court "order[ed] payment of [Banks'] fees."

{5}     After this determination, the parties litigated whether Mother's Estate should pay Banks' bills. The district court, in a letter decision, provided a summary of the parties' arguments, including: (1) Banks' contention that her work was for Mother's benefit; (2) Mother's Attorney's position in the motion to protect assets that if Banks' work was for Mother's benefit, it was duplicative of the guardian ad litem's work; and (3) Current Guardian's argument that Banks provided no authority to support an award of attorney fees and did not satisfy procedural requirements. The district court concluded that (1) Banks had initiated and furthered the

3

guardianship/conservatorship process; (2) Banks' work was not duplicative of the guardian ad litem's work; and (3) Banks had complied with the court's orders regarding submission of a fee affidavit. The district court denied Mother's Attorney's motion to protect assets and concluded that "[t]he only issue remaining is the amount of attorney[] fees to be awarded." The district court followed the letter decision with an order, which further directed the parties to "outline any objections they have to specific itemized attorney fee entries" that were set forth in the fee affidavit that Banks had already submitted.

{6}     Further disputes about the amounts to be paid ensued, after which the district court largely overruled objections to the amount of fees that Banks requested and entered an order to pay the fees from Mother's Estate, finding that Banks' services were "for the benefit of" Mother. The district court additionally granted both Current Guardian's motion to stay pending appeal subject to obtaining an appeal bond and Banks' motion for reimbursement of certain costs paid to the guardian ad litem. This appeal followed.

{7}     While the record sheds further light on the context in which this appeal arises, we are mindful of the sequestered nature of the proceedings and therefore limit further discussion of the facts to those that are necessary to our analysis.

4

**DISCUSSION**

{8}    In general, New Mexico adheres to the American rule and holds parties responsible for their own attorney fees unless provided otherwise by statute, court rule, or contractual agreement. *See N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 986 P.2d 450. Our Supreme Court has recognized some limited and narrow exceptions to this rule, including: "(1) exceptions arising from a court's inherent powers to sanction the bad faith conduct of litigants and attorneys, (2) exceptions arising from certain exercises of a court's equitable powers, and (3) exceptions arising simultaneously from judicial and legislative powers." *Id.* ¶ 15. Because New Mexico has "strictly adhered to th[e American] rule since our territorial days," *id.* ¶ 9, there is a "need for special justification before we depart from [that] precedent" and our Supreme Court has expressed a "reluctance to extend awards of attorney[] fees except in limited circumstances," *id.* ¶ 11 (alteration, internal quotation marks, and citation omitted). Current Guardian argues that the district court did not have contractual or statutory authority to award attorney fees and that even if an award of attorney fees was appropriate, Mother's Estate should not be required to pay the amounts ordered. In relevant part, Banks responds that the fees were appropriately awarded as a sanction for Intervenor's litigation behavior and that the Estate should pay the amounts ordered because Banks acted for the benefit of Mother's Estate.

5

{9} To determine whether the district court had authority to order the payment of fees, however, we must account for the context in which this case arose—an Article 5 proceeding for guardianship and conservatorship. We therefore begin with a brief overview of the relevant statutes. *See In re Guardianship of C.G.*, 2020-NMCA-023, ¶ 40, 463 P.3d 487 ("When construing statutes, our guiding principle is to determine and give effect to legislative intent, considering the language of the provisions at issue in the context of the statute as a whole, including the purposes and consequences of the Act." (alteration, internal quotation marks, and citation omitted)).

## I. The Relevant Law of Conservatorships of Incapacitated/Protected Persons Under Article 5

{10} Article 5 permits district courts to appoint a conservator to protect an adult person who "demonstrates over time either partial or complete functional impairment . . . to the extent that the person is unable to manage the person's personal affairs or . . . financial affairs or both." Section 45-5-101(F) (defining incapacitated persons); *see also* § 45-5-102(A) (defining the applicability of Article 5). District courts are directed "to encourage the development of maximum self-reliance and independence of a protected person and make protective orders only to the extent necessitated by the protected person's mental and adaptive limitations and other conditions warranting the procedure." Section 45-5-402.1(A). Overall, the legislative goal is "to preserve and protect the rights of incapacitated persons." *In re*

*Guardianship of C.G.*, 2020-NMCA-023, ¶¶ 42, 58 (construing Article 5 to define the district court's duty to protect incapacitated persons while confining a conservator's role to that "made necessary by the incapacitated person's limitations").

{11} A "'conservator' means a person who is appointed by a court to manage the property or financial affairs or both of a protected person." Section 45-5-101(A). A petition to appoint a conservator may be filed by "a person interested in the estate." Section 45-5-404(A)(1). When a petition to appoint a conservator for an adult is filed, the district court is required, in relevant part, to set a hearing on the petition (petition hearing) and appoint a qualified health care professional, who must examine the allegedly incapacitated person and submit a report to the court with specific information. *See* § 45-5-407(B)-(C), (D) (addressing the appointment of a court visitor). If, however, the district court finds that "adherence to the procedures" for the petition hearing "would cause serious, immediate and irreparable harm to the alleged incapacitated person's . . . estate or financial interests," after an initial hearing, the court "shall appoint a temporary conservator and shall specify the temporary conservator's powers." Section 45-5-408(A)-(C).

{12} After the petition hearing, if the district court makes the required findings, it may appoint either a full or limited conservator. Section 45-5-407(I)-(J). A

7

permanent, as opposed to temporary, conservator for an incapacitated adult is appointed only if the district court finds

> that the person has property that may be wasted or dissipated unless proper management is provided; that funds are needed for the support, care and welfare of the person or those entitled to be supported by him; that protection is necessary or desirable to obtain or provide funds; and that . . . the person is incapacitated.

Section 45-5-401(B)(1).

{13} The conservator's powers and duties are defined by statute. *See* §§ 45-5-424, -425. Most relevant to this proceeding, Section 45-5-425(A)(2) provides:

> A conservator may expend or distribute income or principal of the estate without court authorization or confirmation for the protected person and his dependents in accordance with the following principles: . . . the conservator is to expend or distribute sums reasonably necessary for the support, education, care or benefit of the protected person.

To make such expenditures or distributions, a conservator must give "due regard to" the protected person's needs and financial circumstances. *See* § 45-5-425(A)(2). Article 5 additionally explicitly permits compensation by the estate for certain appointed professionals: "If not otherwise compensated for services rendered, any visitor, attorney, qualified health care professional or guardian appointed in a guardianship proceeding is entitled to reasonable compensation from the estate of the incapacitated person." Section 45-5-105.

{14} Nevertheless, the conservator's authority to expend or distribute the estate is not without check. Broadly, in the exercise of statutory powers, a conservator "shall

8

act as a fiduciary and shall observe the standards of care applicable to trustees as described by [the Uniform Trust Code, NMSA 1978, §§] 46A-8-801 through 46A-8-807 [(2003, as amended through 2007)]." Section 45-5-417. Specifically, after a conservator has been appointed, an interested party "may file a petition in the appointing court" for an order, in relevant part, requiring an accounting of the estate or for an order granting appropriate relief. Section 45-5-416(A)(2), (5); *see also* § 45-5-416(B) (permitting a conservator to "petition the appointing court for instructions concerning [their] fiduciary responsibility"); § 45-5-416(C) (allowing for the court to provide instructions or make orders "[u]pon notice and hearing").

## II. The District Court's Authority to Order Payment of Attorney Fee Bills

{15} With this statutory backdrop, we consider whether the district court had authority to order the payment of Banks' bills for attorney fees. Whether an award of attorney fees is permissible according to a statute, rule, contract, or exception is a question of law that we review de novo. *NARAL*, 1999-NMSC-028, ¶¶ 7, 9-10. If, however, payment of fees is authorized, the determination of whether to award fees and the amount is left to the discretion of the district court, which we do not disturb absent an abuse of discretion. *See Lewis v. Lewis*, 1987-NMCA-073, ¶ 53, 106 N.M. 105, 739 P.2d 974. With these standards in mind, we first determine that Article 5 gives a conservator authority to pay reasonable and necessary attorney fee bills that are incurred for the benefit of the estate with due regard for how paying the bill will

impact the protected person. Because the district court in the present case did not rely on this authority to exercise its discretion to order the fees to be paid, we next consider whether affirming the district court for this reason is appropriate under the circumstances.

**A. The District Court Had Authority to Order the Payment of Fees Under Sections 45-5-425(A) and -508(E)**

{16} Our first step is to determine whether the statutory scheme—here, Article 5—permits the payment of attorney fees under the circumstances. *See NARAL*, 1999-NMSC-028, ¶ 9 (recognizing statutory authority as a basis for an award of attorney fees). As we have described, the Legislature has authorized a conservator to distribute the "income or principle of the estate" provided that (1) the distribution is "reasonably necessary for the support, education, care or benefit of the protected person" and (2) the conservator pays "due regard to" a number of identified factors. *See* § 45-5-425(A)(2). Those factors include

> (a)　the size of the estate, the probable duration of the conservatorship and the likelihood that the protected person, at some future time, may be fully able to manage his affairs and the estate which has been conserved for him;

> (b)　the accustomed standard of living of the protected person and members of his household; and

> (c)　other funds or sources used for the support of the protected person.

*Id.* The district court in the present case gave the temporary conservator similar powers and as a result, the temporary conservator had the power to expend sums for Mother's benefit. *See* § 45-5-402.1(B)(3) (permitting district courts to authorize a conservator to exercise "all the powers over the estate and financial affairs which the person could exercise if present and not under disability"); § 45-5-408(E) (limiting a temporary conservator's power to dispose of an alleged incapacitated person's property to that specifically authorized by the court). It is no reach to conclude that filing a petition for guardianship or conservatorship—the act for which Banks sought to be paid—is an act designed to benefit the protected person "to the extent made necessary by the incapacitated person's limitations." *See In re Guardianship of C.G.*, 2020-NMCA-023, ¶ 42 (noting that "Article 5's text evidences legislative intent to preserve and protect the rights of incapacitated persons"). For these reasons, we conclude that district courts have the power to authorize a conservator to pay attorney fees that are billed to an estate, within the parameters of Section 45-5-425(A).

{17}    This conclusion is consistent with the decisions of other jurisdictions, which permit conservators to pay an attorney who petitions for guardianship or conservatorship, because the petitioner "most often acts for and on behalf of one who is unable to act or care for himself or herself." *See In re Guardianship of*

11

*Donley*, 631 N.W.2d 839, 843-44 (Neb. 2001). We agree with the Nebraska court's explanation that

> the filing of the petition and the hearing thereon are indispensable steps in the preservation of the protected person's estate. It is recognized that when an individual is in need of physical or financial protection, the law must in many instances think and act for him or her. The state and society have a significant interest in bringing the estate of individuals in need of protection under the vigil of the county court. The court, as general conservator of the rights of persons in need of protection, is dependent upon applications being filed by interested persons so that the court may assume control of the estate and preserve it for the protected person.

*Id.* at 844 (citations omitted); *see also In re Conservatorship of T.K.*, 2009 ND 195, ¶¶ 18-22, 775 N.W.2d 496, (permitting the award of a petitioner's attorney fees in a guardianship or conservatorship proceeding); *In re Est. of Bayers*, 1999 MT 154, ¶¶ 12-13, 17, 983 P.2d 339; *Carney v. Aicklen*, 587 S.W.2d 507, 511 (Tex. App. 1979) (same); *In re Est. & Guardianship of Vermeersch*, 488 P.2d 671, 673-75 (Ariz. Ct. App. 1971) (same); *In re Sherwood's Est.*, 206 N.E.2d 304, 306-07 (Ill. App. Ct. 1965) (same); *In re Dunn*, 79 S.E.2d 921, 927 (N.C. 1954) (same); *Penney v. Pritchard & McCall*, 49 So. 2d 782, 787 (Ala. 1950) (same); *In re Bundy's Est.*, 186 P. 811, 812 (Cal. Ct. App. 1919) (same). *See generally* C.K. Cobb., Jr., Annotation, *Allowance of Attorney's Fee Out of Estate of Alleged Incompetent for Services in Connection With Inquisition Into Sanity*, 22 A.L.R.2d 1438 (1952).

{18}     Current Guardian contends that Section 45-5-425 should not control the attorney fee order in the present case and maintains that

12

> [n]othing in [Section] 45-5-425 supports the authority of a conservator using estate funds to pay for legal fees incurred by an interested person, or their attorney, for instituting and pursuing a legal proceeding that is against the civil rights of the protected person, which is what the [d]istrict [c]ourt determined was done for the "benefit of" the protected person.

This proposition suggests that guardianships and conservatorships are subject to the whims of "interested persons." We disagree. As this Court has explained, the "importance of court supervision in guardianship and conservatorship proceedings cannot be overstated, including oversight of the conduct of attorneys appearing in such cases, whether or not they are appointed by the court." *In re Guardianship of C.G.*, 2020-NMCA-023, ¶ 58. *See generally Clinesmith v. Temmerman*, 2013-NMCA-024, ¶¶ 23-24, 298 P.3d 458 (explaining that "the goal of a conservatorship is to protect the person and property of persons whose functional and decision-making capacity has become impaired" and that conservatorship proceedings require judicial oversight (internal quotation marks and citation omitted)); *In re Guardianship of Sleeth*, 244 P.3d 1169, 1175 (Ariz. Ct. App. 2010) ("[J]udges play a vital role in fulfilling the legislature's intent to safeguard those in need of the protection of conservators and guardians."). The district court regulates the proceeding by obtaining reports from the qualified health care professional and the visitor, receiving testimony or evidence from the person to be protected, inquiring into the person's functional limitations, and ascertaining the person's capacity to manage finances. *See* § 45-5-303 (guardianship); § 45-5-407 (conservatorship).

Ultimately, based on this information, the district court must either dismiss the petition or conclude by clear and convincing evidence that a guardianship and/or conservatorship is justified in full or in part. *See* § 45-5-304(B)-(C) (guardianship); § 45-5-407(H)-(I) (conservatorship). Just as the district court oversees an Article 5 proceeding generally, to safeguard the person in need of protection, the district court has the discretion to determine whether, when, and in what amount such fees should be paid by a conservator, subject to Section 45-5-425(A)(2). *See Lewis*, 1987-NMCA-073, ¶ 53 (placing fees within the discretion of the district court).

{19}     Current Guardian argues that Article 5 does not support payment by Mother's Estate of the fees for the attorney who filed the petition. She first contends that Article 5 specifically permits "reasonable compensation from the estate of the incapacitated person" for court-appointed attorneys, *see* § 45-5-105, and because Banks is not a court-appointed attorney, compensation is inappropriate. Specifically, Current Guardian posits that because Section 45-5-303(A) permits an interested person to file a petition, Section 45-5-105 would account for attorney fees if the Legislature intended for the interested person's attorney to be paid from the estate. We do not view the silence in Section 45-5-105, governing compensation for court-appointed professional fees, to control the conservator's authority under Section 45-5-425(A)(2). Had the Legislature intended to limit the conservator's power in the

14

way Current Guardian suggests, such a limitation would be explicit in Section 45-5-425(A)(2).

{20} Current Guardian additionally argues that because Section 45-5-315 does not permit an incapacitated person to consent to guardianship, the incapacitated person is necessarily opposed to the protections sought by the petition and the petitioning party must meet a burden of proof for the appointment of a guardian or conservator. For these reasons, Current Guardian maintains that Section 45-5-425 does not contemplate that the protected person would pay the fees to the attorney who filed the petition. To the contrary, however, as the district court aptly stated, "[T]hat's not what this case should be about, this case is about what should be in the best interest of the incapacitated persons."

{21} The purpose of the proceeding is to determine whether the person involved requires any measure of the protection alleged in the petition. *See* § 45-5-301.1 ("Guardianship for an incapacitated person shall be used only as is necessary to promote and to protect the well[-]being of the person, shall be designed to encourage the development of maximum self[-]reliance and independence of the person and shall be ordered only to the extent necessitated by the person's actual functional mental and physical limitations."); § 45-5-402.1(A) ("The court shall exercise the authority conferred in [Article 5] to encourage the development of maximum self-reliance and independence of a protected person and make protective orders only to

15

the extent necessitated by the protected person's mental and adaptive limitations and other conditions warranting the procedure."); *see also In re Est. of Bayers*, 1999 MT 154, ¶ 14 ("[A] petition to appoint a guardian is not an adversarial proceeding, but rather a proceeding to promote the best interests of the person for whom guardianship is sought."). Current Guardian cites no compelling authority to the contrary. Viewed in that light, a district court may, as the district court did in the present case, view the attorney for the petitioner to be seeking to benefit the protected person.

{22}     For these reasons, we conclude that district courts have statutory authority to order a conservator to pay fees to a petitioner's attorney when fees are reasonably necessary for the benefit of the protected person, considering the impact that paying the fees will have on the protected person.

**B.     Affirmance Is Appropriate Considering This Court's Appellate Function and the Record in This Case**

{23}     Neither the parties nor the district court analyzed Banks' fee bill according to Sections 45-5-425(A) and -408(E), or the district court's order of appointment of the temporary conservator. Thus, the question remains whether affirmance on these grounds is an appropriate exercise of this Court's authority. "We are a court of review and our function is to see if legal error that would change the result occurred." *Clayton v. Trotter*, 1990-NMCA-078, ¶ 4, 110 N.M. 369, 796 P.2d 262 (citations omitted). To that end, we presume the "correctness in the rulings and decisions of

16

the district court." *Goodman v. OS Rest. Servs., LLC*, 2020-NMCA-019, ¶ 16, 461 P.3d 906 (alterations, internal quotation marks, and citation omitted). We are not bound, however, by the district court's conclusions of law—which we review de novo—and therefore may analyze legal questions, including those involving statutory interpretation, that were not considered or brought before the district court. *See Bounds v. State*, 2011-NMCA-011, ¶ 33, 149 N.M. 484, 252 P.3d 708 (providing that this Court "is not bound by a district court's legal conclusions and may independently draw its own conclusions of law on appeal"), *aff'd sub nom. Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, 306 P.3d 457; *see also Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶¶ 30-31, 137 N.M. 161, 108 P.3d 1019 (approving the application of a legal test despite the parties' failure to use the test, because "appellate courts can and must apply the appropriate law"); *Kreutzer v. Aldo Leopold High Sch.*, 2018-NMCA-005, ¶ 31, 409 P.3d 930 (providing that questions of law, including statutory interpretation, are subject to de novo review).

{24} To achieve balance between our appellate presumptions and duty to correctly apply the law, we will uphold a district court's decision if it is right for any reason so long as (1) "reliance on the new ground would not be unfair to the appellant"; (2) doing so does not require us "to assume the role of the [district] court by delving into fact-dependent inquiries"; and (3) "there is substantial evidence to support the

17

ground on which we rely." *Freeman v. Fairchild*, 2018-NMSC-023, ¶ 30, 416 P.3d 264 (alterations, internal quotation marks, and citation omitted). With these principles and limitations in mind, as we explain, we affirm the district court based on the grounds articulated in this opinion.

{25}     The district court's findings demonstrate that the parties argued the necessary facts throughout the proceeding. The district court observed that "this case started" when the appointment of a guardian and conservator became necessary to protect Mother because she was not receiving "adequate or proper care." The district court recounted that resolution of the petition was prolonged because along with other circumstances and complications arising from the COVID-19 pandemic, Siblings' intervention caused delay and prompted unnecessary litigation. The district court provided "example[s] of the unnecessary expenditure of time and effort." In a subsequent letter ruling and order related to Banks' fees, the district court rejected the argument that Banks' work was duplicative and specifically found that Banks' services were "for the benefit of" Mother. During the fee litigation, the district court additionally received reports from the temporary conservator, and later from Intervenor, regarding the financial health of Mother's estate.

{26}     For these reasons, (1) affirmance on the grounds set forth herein is not unfair because the relevant facts were established or argued by the parties throughout these proceedings; (2) this Court has no need to "delv[e] into fact-dependent inquiries"

18

because the district court made the necessary factual findings; and (3) those findings, as well as our conclusions, were supported by substantial evidence in the record. *See id.* (alterations, internal quotation marks, and citation omitted). Absent a specific attack, *Stanley v. N.M. Game Comm'n*, ___-NMCA-___, ¶ 15, ___ P.3d ___ (A-1-CA-38739, Aug. 31, 2023), we defer to those findings, *see State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183 (providing that appellate courts "review[] factual matters with deference to the district court's findings if substantial evidence exists to support them"). Thus, we conclude that we best fulfill our appellate function by upholding the district court's factual determinations regarding the payment of Banks' bills on a different legal ground.

**CONCLUSION**

{27} For these reasons, we affirm the district court.

{28} **IT IS SO ORDERED.**

_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

_____
**JENNIFER L. ATTREP, Chief Judge**

_____
**JACQUELINE R. MEDINA, Judge**

19